Gary P. Naftalis
Stephen M. Sinaiko
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Attorneys for Rajat K. Gupta

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x
                                                          :
UNITED STATES OF AMERICA                                  :
                                                          :   No. 11 Cr. 907 (JSR)
            - against -                                   :
                                                          :   ECF Case
RAJAT K. GUPTA,                                           :
                                                          :
            Defendant.                                    :
                                                          :
——————————————————————— x


MEMORANDUM OF LAW OF DEFENDANT RAJAT K. GUPTA IN
SUPPORT OF MOTION *IN LIMINE* NUMBER ONE:
EXCLUSION OF THE JULY 29, 2008 RECORDED PHONE CONVERSATION

## Table of Contents

Page

Table of Authorities ............................................................................................................. ii

Preliminary Statement ......................................................................................................... 1

Argument ............................................................................................................................ 3

    I.       The July 29 Call Is Inadmissible Propensity Evidence ........................................... 3

           A.    The July 29 Call Is Not Direct Evidence of Insider Trading ...................... 3

           B.    The July 29 Call is Inadmissible Propensity Evidence Under Rule 404(b) ............................................................................................................ 6

    II.      The July 29 Call Is Inadmissible Because It Is More Prejudicial Than Probative ................................................................................................................. 7

Conclusion ........................................................................................................................ 10

## Table of Authorities

Page

*S.E.C. v. Bausch & Lomb Inc.*,
  565 F.2d 8 (2d Cir. 1977)..................................................................................4

*S.E.C. v. Svoboda*,
  409 F. Supp. 2d 331 (S.D.N.Y. 2006)..................................................................5

*United States v. Curley*,
  639 F.3d 50 (2d Cir. 2011)..................................................................................7

*United States v. Ferguson*,
  246 F.R.D. 107 (D. Conn. 2007)..........................................................................9

*United States v. Juwa*,
  508 F.3d 694 (2d Cir. 2007)................................................................................6

*United States v. Kaplan*,
  490 F.3d 110 (2d Cir. 2007)................................................................................9

*United States v. Knohl*,
  379 F.2d 427 (2d Cir. 1967)................................................................................8

*United States v. Mankani*,
  738 F.2d 538 (2d Cir. 1984)................................................................................9

*United States v. Morrison*,
  153 F.3d 34 (2d Cir. 1998)..................................................................................8

*United States v. Scott*,
  No. 10-3978-Cr., 2012 WL 1143579 (2d Cir. Apr. 6, 2012)............................6, 7

*United States v. Varoudakis*,
  233 F.3d 113 (1st Cir. 2000)...............................................................................6

*United States v. Wassner*,
  141 F.R.D. 399 (S.D.N.Y. 1992) ........................................................................9

**OTHER AUTHORITIES**

Fed. R. Evid. 403 ...........................................................................................2, 3, 7, 8, 9

Fed. R. Evid. 404(b)................................................................................................passim

Fed. R. Evid. 404(b)(1)...................................................................................................6

Fed. R. Evid. 404(b)(2)...................................................................................................7

Defendant Rajat K. Gupta respectfully submits this memorandum of law, the Omnibus Declaration of Stephen M. Sinaiko, Esq. dated May 7, 2012 and the accompanying exhibits ("Exh."), in support of his motion *in limine* to exclude from evidence the recorded phone conversation between Mr. Gupta and Raj Rajaratnam of July 29, 2008 (the "July 29 Call").

## Preliminary Statement

The government alleges that Mr. Gupta tipped Rajaratnam on a number of identified occasions, none of which is captured on a wiretap conversation. Indeed, it is undisputed that the government has no direct evidence of any kind of the alleged tips. The July 29 Call is the only recorded substantive phone conversation between the two men, but the problem for the government is that this call neither included a tip of material, nonpublic information nor led to any trading by Rajaratnam. The call lasted approximately 24 minutes and has two distinct parts. In the first part of the call, which lasted for about four minutes, Rajaratnam informed Mr. Gupta about his upcoming meeting with Gary Cohn (the COO of Goldman Sachs) and asked Mr. Gupta about the widely reported news that Goldman was looking at ways to develop new access to capital, including the possible acquisition of a commercial bank. (Exh. B at 1-4).[1] Rajaratnam did not trade on the basis of this conversation, a point we believe is undisputed. In the second part of the call, which lasted approximately 20 minutes, Mr. Gupta and Rajaratnam discussed various other business matters. (*Id.* at 5-20).

---

[1] The recording is included on the CD annexed as Exhibit A to the Sinaiko Declaration. Exhibit B to the Sinaiko Declaration is the government's transcript of the call, which Mr. Gupta is using for purposes of this motion. Mr. Gupta does not concede the accuracy of the government's transcription and reserves the right to offer his own transcription at trial if the call is admitted.

Although Mr. Gupta did not provide Rajaratnam with any material, non-public information in the July 29 Call, and Rajaratnam made no trades on the basis of the call, the government in *Rajaratnam* highlighted the call in summation and argued that it was evidence that "Gupta violated his duty right there and then. He was basically confirming a rumor that Goldman was thinking about acquiring a commercial bank, breaching his duty, and number two, he was telling him there is nothing imminent. There is nothing that's going to happen right away. That's information that nobody in the public has access to, except Mr. Rajaratnam by talking to Mr. Gupta." (Exh. C at 5245). The government's characterization was not accurate. It was not true that "nobody in the public had access to" that information. It was information Goldman itself made public to analysts and the financial press prior to Mr. Gupta's call with Rajaratnam. That did not stop the government from arguing further that calls like this were "business as usual" for Mr. Gupta and Rajaratnam, and that "[t]his wasn't the first time Mr. Gupta was asked about what was going on at Goldman. And this wasn't the first time that Mr. Gupta was disclosing what was going on at Goldman." (*Id.* at 5243-45). The government plainly invited the *Rajaratnam* jury to conclude, based on the July 29 Call, that there must have been occasions when Mr. Gupta did provide material, non-public information to Rajaratnam, and that Rajaratnam then traded on that information.

The July 29 Call should be excluded in this case because no part of it is direct evidence of the insider trading offenses charged in the indictment in this case. The government made plain by its use of the call in *Rajaratnam* that the call serves no permitted evidentiary purpose. Rather, the government used the call as impermissible propensity evidence of the type that is prohibited by Fed. R. Evid. 404(b). Even if there were a basis to admit the call for a proper purpose, it should be excluded as far more prejudicial than probative under Fed. R. Evid.

403. The call is not evidence of insider trading, but a jury listening to the first part of the call is likely to be confused and conclude – as the government plainly asked the *Rajaratnam* jury to conclude – that the discussion by Mr. Gupta of information that already was in the marketplace was illegal, or that Mr. Gupta must have illegally disclosed information on other occasions. The second part of the call is equally prejudicial because it creates a possibility of jury confusion about separate dealings between Mr. Gupta and Rajaratnam, as well as aspects of their relationship with another business associate, which could be twisted to suggest improper dealings.

## Argument

### I.   The July 29 Call Is Inadmissible Propensity Evidence

#### A.   The July 29 Call Is Not Direct Evidence of Insider Trading

The July 29 Call is not direct evidence of the insider trading offenses charged in the superseding indictment because it does not tend to prove Mr. Gupta's disclosure of material, nonpublic information in breach of his fiduciary duty to Goldman, and is unrelated to any trading by Rajaratnam. As shown by the government's transcription of the call, Rajaratnam initiated the discussion of Goldman, which he began by stating, "I called you because I am meeting with Gary Cohn on Thursday . . . And there's a rumor, that Goldman might look to buy a commercial bank." (Exh. B at 2). Mr. Gupta did not call Rajaratnam and tip material, non-public information about Goldman.

To the extent that Mr. Gupta responded to Rajaratnam's questions in advance of Rajaratnam's scheduled meeting with Goldman's COO, his limited comments were consistent with Goldman's interest that clients and investors, including Rajaratnam and Galleon, not worry about Goldman's liquidity in the difficult period following the abrupt demise of Bear Stearns during the depths of the 2008 financial crisis. Indeed, far from representing any breach of a duty

to maintain the confidentiality of Goldman information, Mr. Gupta's comments mirror statements that Goldman itself was actively disseminating at precisely the same time, *i.e.*, that the firm was considering the purchase of a commercial bank.

As to materiality, the test in the insider trading context is "whether the particular information conveyed would have been important to a reasonable investor in determining whether to buy, sell or hold a security." *S.E.C. v. Bausch & Lomb Inc.*, 565 F.2d 8, 15 (2d Cir. 1977) (citations omitted). In this case, the Court does not need to determine whether the information about Goldman in the conversation was material, because both Goldman and the government already have answered that question in the negative. Goldman was disclosing to influential analysts and important Goldman clients the possibility of a bank acquisition, and did not see the information as material so as to require a Regulation FD disclosure. And in the superseding indictment, as supplemented by the April 9, 2012 bill of particulars, the government alleges that Mr. Gupta provided "Tips To Rajaratnam In Furtherance of the Conspiracy" on ten occasions. The July 29 Call is included among these "tips." However, with the singular exception of the July 29 Call, the government charges that for each of the alleged tips "Gupta disclosed to Rajaratnam, and their known and unknown co-conspirators, *material*, nonpublic information" relating to various corporate matters of Goldman and Procter & Gamble. (*Id.*) (emphasis added). In the case of the July 29 Call, the government omitted the word "material" and alleged merely that "Gupta disclosed to Rajaratnam, and their known and unknown co-conspirators, nonpublic information relating to Goldman's strategic plans and board discussions (as reflected in the July 29, 2008 wiretap call between Rajaratnam and Gupta)."

Nor was the information even nonpublic at the time of the July 29 Call. "Information is nonpublic if it has neither achieve[d] broad dissemination to the investing public

- 4 -

generally and without favoring any special person or group nor been traded on by a few persons with knowledge, causing the information to be fully impounded into the price of the particular stock." *S.E.C. v. Svoboda*, 409 F. Supp. 2d 331, 340 (S.D.N.Y. 2006) (citations and internal quotation marks omitted). Here, Goldman's most senior executives – including its CFO and Co-President – were proactively putting out the word to leading securities analysts and their firms' clients who were substantial holders of Goldman shares, on and in fact before July 29, 2008 that Goldman was exploring alternative funding sources and had extensively considered the possible acquisition of a commercial bank, but had determined not to go forward at that time. This is well-documented in both analyst reports and the financial press, including:

- A Merrill Lynch research report dated July 28, 2008 that noted Goldman's "willingness to at least consider a bank acquisition" but concluded that there was not a "very high probability" that Goldman would in fact acquire a commercial bank. In a meeting with prominent Merrill analyst Guy Moszkowski, Goldman CFO David Viniar "noted that the firm had done extensive analysis" of the potential purchase of a commercial bank, but "made it clear that such a deal was unlikely to be pursued if it meant that other traditional, attractive GS businesses could not be continued." (Exh. D at 5);

- A report issued by Oppenheimer after its well-known analyst Meredith Whitney met with senior Goldman executives on July 29, 2008 stating that "[w]hile much speculation has been made about Goldman's interest in acquiring a retail bank, we believe the chances are less than slim. Management stated frankly that it was highly unlikely given the current regulation." (Exh. E at 1);

- A Dow Jones report on July 28, 2008 discussing the Merrill Lynch research report stating that "Wall Street giant Goldman Sachs Group Inc. has considered buying a deposit-taking bank, a move that would help it fund its businesses during times of market turmoil." (Exh. F);

- A July 30, 2008 Wall Street Journal story titled, "Why Goldman Sachs Won't Buy a Retail Bank" and discussing the Oppenheimer report that stated, "That Goldman is looking to buy a retail bank has been rumored recently. But Goldman has put the kibosh on that idea, specifically citing the increased federal oversight that would come with it." (Exh. G).

In addition, Goldman CEO Lloyd Blankfein confirmed in his recent deposition in the SEC enforcement action that this information was neither confidential nor material, testifying that

- 5 -

"Whatever [Mr. Viniar] said and the fact that he said it would not be confidential," and "Whatever [the senior Goldman executives] said to these people certainly was not confidential or material." (Exh. H at 187, 193-94) (agreeing, as well, that if the information disclosed were material, Goldman "would have been required to follow the strictures of Regulation FD and make a broader across the board type of disclosure.").[2]

### B. The July 29 Call is Inadmissible Propensity Evidence Under Rule 404(b)

Rather than direct evidence, the July 29 Call is propensity evidence, the admission of which is barred by Fed. R. Evid. 404(b)(1), which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The Second Circuit has made clear that "this inclusionary rule is not a carte blanche to admit prejudicial extrinsic act evidence when, as here, it is offered to prove propensity." *United States v. Scott*, No. 10-3978-Cr., 2012 WL 1143579, at *5 (2d Cir. Apr. 6, 2012). As aptly put by the First Circuit, "[d]espite the fairness implications of the prosecution's use of prior bad act evidence, the prosecution too often pushes the limits of admissibility of this evidence, knowing its propensity power and gambling that the time constraints on the trial court, the court's broad discretion, the elasticity of Rule 404(b), and the harmless error rule of the appellate court, will save it from the consequences of overreaching. That is not always a good gamble." *United States v. Varoudakis*, 233 F.3d 113, 125 (1st Cir. 2000).

The government's summation in *Rajaratnam* devoted three transcript pages to the argument that the July 29 Call was "business as usual" for Mr. Gupta and Rajaratnam, claiming

---

[2] The fact that the superseding indictment alleges that the July 29 Call was an "overt act" in the indictment does not make it so because the indictment is not proof of anything. *See United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) ("It is axiomatic that in a criminal trial, an indictment is not evidence of guilt") (internal quotation marks omitted).

- 6 -

the call was proof that "[t]his wasn't the first time Mr. Gupta was asked about what was going on at Goldman. And this wasn't the first time that Mr. Gupta was disclosing what was going on at Goldman." (Exh. C at 5243-45). This is the very epitome of "if he did it once, he must have done it other times" propensity evidence that stretches the elasticity of Rule 404(b) past the breaking point.[3]

## II. The July 29 Call Is Inadmissible Because It Is More Prejudicial Than Probative

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Under this rule, even if there were a basis to admit evidence of the July 29 Call as direct evidence of the charged offenses or under Rule 404(b), such evidence "must not have its probative value substantially outweighed by its prejudicial effect." *Scott*, No. 10-3978-Cr., 2012 WL 1143579, at *10. "Evidence is unfairly prejudicial when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (internal quotation marks omitted). "If the other acts tend to prove a fact not in issue or to excite emotions against the defendant, they create a prejudicial effect." *Id.* It is incumbent on the district court to "make a conscientious assessment of whether unfair prejudice substantially outweighs probative value," and not simply assume that evidence passes Rule 403 muster. *Scott*, No. 10-3978-Cr., 2012 WL 1143579, at *10 (internal quotations marks omitted).

---

[3] While Fed. R. Evid. 404(b)(2) authorizes the admission of "other act" evidence for limited purposes such as to prove knowledge or intent, none of those permitted purposes is implicated by the first part of the call, and nothing in the first part of the call is addressed to the issues in dispute. *See Scott*, No. 10-3978-Cr., 2012 WL 1143579, at *8 ("evidence admitted under 404(b) must be relevant to an issue *in dispute*.") (emphasis in original). Moreover, here the prosecution was required to disclose any similar act evidence it was relying on no later than one month before trial. It did not identify any such evidence.

Here, the prejudice is obvious. The July 29 Call is not direct evidence of the charged insider trading offenses, but a jury hearing the call will undoubtedly be encouraged by the government to conclude that, because Mr. Gupta discussed Goldman matters with Rajaratnam in the call, he must have engaged in insider trading with Rajaratnam on different occasions. Indeed, that is exactly how the government described the call during Rajaratnam's trial. (Exh. C at 5243-45).

The harm is compounded because the July 29 Call has been captured in a wiretap recording. The Second Circuit has long recognized that courts must exercise caution in admitting recordings because "recorded evidence is likely to have a strong impression upon a jury." *United States v. Morrison*, 153 F.3d 34, 56 (2d Cir. 1998) (quoting *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991)); *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir. 1967). Here, the recorded evidence of the July 29 Call will inevitably invite a blurring of the lines of proof. The government should not be permitted to introduce evidence of the July 29 Call to try to prove that Mr. Gupta tipped Rajaratnam on occasions for which there is no recording just as it did in *Rajaratnam*. That is the very essence of unfair prejudice that application of Rule 403 is meant to avoid.

As for the second part of the call, it too is more prejudicial than probative of any issues in dispute. It is conceivable that the government could isolate Rajaratnam's statement that he was giving Anil Kumar "a million dollars a year for doing literally nothing" and then invite the jury to infer that this statement somehow put Mr. Gupta on notice that Rajaratnam was paying Kumar, an accomplice witness, in exchange for inside information. But there was no discussion of insider trading anywhere in the call. Rather, at that point, Rajaratnam was discussing Kumar and his potential involvement in various ventures. Only after complaining that

Kumar was not "bringing anything new to the party" did Rajaratnam say he was giving Kumar money "for doing literally nothing." Kumar is not named as a co-conspirator in this case; there is no allegation that Rajaratnam or Kumar ever told Mr. Gupta about their illicit dealings with each other, and evidence proffered by the government to demonstrate Mr. Kumar's guilt, unrelated to the charged conspiracy, is plainly inadmissible here. (Exh. B at 6).

There is a real risk that the jury would speculate about the words "a million dollars a year for doing literally nothing" and ascribe guilt to Mr. Gupta based on his mere association with Rajaratnam and Kumar. This evidence should therefore be excluded.[4] *See United States v. Mankani*, 738 F.2d 538, 546 (2d Cir. 1984) (reversing conspiracy conviction where evidence against defendant included proof that she lived with a co-conspirator: "In order to give this fact weight, it would be necessary to adopt something close to the concept of guilt by association."); *United States v. Wassner*, 141 F.R.D. 399, 405 (S.D.N.Y. 1992) ("Guilt by association is just what Fed. R. Evid. 403 was intended to exclude."). This rule applies even to evidence that might be relevant to a conspiracy charge, but carries with it a substantial likelihood of establishing guilt by association. *See United States v. Ferguson*, 246 F.R.D. 107, 119 (D. Conn. 2007) (excluding statements "in furtherance of the conspiracy" in order to "prevent the risk that [defendant] will be unduly prejudiced through guilt by association."). Ultimately, the second part of the July 29 Call is simply too attenuated from the charges in this case to have any probative value. *See United States v. Kaplan*, 490 F.3d 110, 123 (2d Cir. 2007) ("The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved necessarily lessens the probative value of the evidence, and may therefore render it more

---

[4] This motion focuses on this quoted language from the second part of the call. Should the government seek to offer other statements from the second part of the call, Mr. Gupta reserves the right to state his objection at such time.

susceptible to exclusion as unduly confusing, prejudicial, or time-consuming . . . .") (quoting *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir.1970)).

## Conclusion

For all of the foregoing reasons, Mr. Gupta respectfully requests that the Court exclude any evidence of the July 29 Call.

Dated: New York, New York  
May 7, 2012

Respectfully submitted,

Kramer Levin Naftalis & Frankel LLP

By: _____/s/ Gary P. Naftalis_____  
Gary P. Naftalis  
Stephen M. Sinaiko

1177 Avenue of the Americas  
New York, New York 10036  
(212) 715-9100

Attorneys for Rajat K. Gupta