UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
––––––––––––––––––––––––––––––––––––––x
:
UNITED STATES OF AMERICA           :
:
-v.-               :
:
RAJAT K. GUPTA,                    :    S1 11 Cr. 907 (JSR)
:
Defendant.        :
:
––––––––––––––––––––––––––––––––––––––x

# THE GOVERNMENT'S SECOND MOTION *IN LIMINE*

PREET BHARARA
United States Attorney
for the Southern District of New York
Attorney for the United States of America

REED BRODSKY
RICHARD TARLOWE
CHRISTINE MAGDO
Assistant United States Attorneys
     - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
––––––––––––––––––––––––––––––––––––––––x
                                        :
UNITED STATES OF AMERICA                :
                                        :
        -v.-                            :
                                        :
RAJAT K. GUPTA,                         :   S1 11 Cr. 907 (JSR)
                                        :
        Defendant.                      :
                                        :
––––––––––––––––––––––––––––––––––––––––x

## THE GOVERNMENT'S SECOND MOTION *IN LIMINE*

The Government respectfully submits this memorandum of law in support of its second motion *in limine*.

## ARGUMENT

### I. The Government Moves To Compel Disclosure Of Attorney-Client Communications In The Event The Defendant Seeks To Rely On Them Affirmatively

The Government respectfully moves *in limine* to compel the disclosure of certain attorney-client communications in the event Rajat Gupta, the defendant, seeks affirmatively to rely on those communications, including factual assertions based in part on those communications, in support of his defense at trial. Further, to avoid unnecessary delay during the trial should the Court find that the defendant at some point has waived the privilege, the Government respectfully asks the Court to compel Gupta and McKinsey & Company ("McKinsey") to produce at this time email communications between Gupta and the relevant attorneys, which would be provided to and reviewed only by a walled-off AUSA, Sarah McCallum.

The Government understands that as part of his defense at trial, the defendant intends to argue that his relationship with Raj Rajaratnam deteriorated at some point prior to the end of the charged conspiracy due to Rajaratnam's handling of a joint investment between Rajaratnam and Gupta called Voyager Capital Partners ("Voyager"). Specifically, Gupta apparently contends that he learned that Rajaratnam redeemed money from their joint investment in Voyager during the summer of 2008 and that Gupta was upset that Rajaratnam took that redemption without notifying Gupta.[1] The Government further understands that as purported proof of the deterioration in Gupta's relationship with Rajaratnam during the charged conspiracy, the defense may seek to introduce evidence, and/or suggest in some way, that Gupta and/or his close friend, advisor, and business partner, Gregory Orman, consulted an attorney with respect to Voyager (including the redemption taken by Rajaratnam) and discussed with that attorney the possibility of filing a lawsuit against Rajaratnam during the charged period of the conspiracy. Notwithstanding having made this claim to the Government, the defendant has vigorously asserted privilege as to all communications between the defendant, Orman, and any of the defendant's other agents, on the one hand, and the relevant attorney and/or his law firm, on the other. Should the defendant seek at trial to use his (or Orman's or any other agent's) communications with those attorneys about Voyager as affirmative evidence in support of his defense, including an assertion of a factual claim which can only be fully assessed by examination of privileged communications, he should not at the same time be permitted to shield

---

[1] When Gupta learned about Rajaratnam's redemption from Voyager is contested. Certain evidence, including statements from witnesses, reflects that Gupta was not informed about Rajaratnam's redemption from Voyager until after the charged conspiracy ended.

the Government from examining the actual contents of those and other related communications.

    A.    **Applicable Law**

"It is a well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privilege for matters pertinent to the claims asserted." *John Doe Co. v. United States,* 350 F.3d 299, 302 (2d Cir. 2003) (citing *United States v. Nobles*, 422 U.S. 225 (1975); *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991)). In other words, "the attorney-client privilege cannot at once be used as a shield and a sword." *Bilzerian*, 926 F.2d at 1292 (citations omitted). Accordingly, "[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes. Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." *Id.* (citations omitted).

The loss of the privilege under such circumstances is sometimes referred to as an "at issue" waiver and is based on principles of fairness. Where "it would be unfair for a party asserting contentions to an adjudicating authority to then rely on its privilege to deprive its adversary of access to material that might disprove or undermine the party's contentions," courts have ruled that the privilege has been waived, or forfeited. *John Doe Co.*, 350 F.3d at 302. Moreover, the "at issue" waiver has been found to apply "even if a party does not attempt to make use of a privileged communication, . . . if he asserts a factual claim the truth of which can only be assessed by examination of the privileged communication." *Bowne of New York City v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993).

Due to the fact-specific nature of the fairness inquiry, the Second Circuit has warned "against broad generalizations, stressing that whether fairness requires disclosure is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted." *John Doe Co.*, 350 F.3d at 302 (citations, quotations and ellipsis omitted).[2] Similarly, if a court finds that the privilege is waived, "then the waiver should be tailored to remedy the prejudice to the government." *In re Grand Jury Proceedings*, 219 F.3d 175, 188 (2d Cir. 2000). When a defendant raises a defense that relies on privileged information *in a judicial setting*, the resulting waiver should be "broad waiver," also known as "subject-matter waiver." *Id.* at 183 (citing *Bilzerian*, 926 F.2d at 1292). "The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter." *Id.* (citation and quotations omitted).

### B.   Discussion

The defendant should not be permitted to disclose selectively his communications (or that of any of his purported agents) with attorneys "for self-serving purposes" while at the same time invoking the privilege to shield from disclosure those or other communications relating to the same subject matter. If Gupta offers evidence that he, or anyone acting on his behalf, spoke to an attorney about Rajaratnam's handling of Voyager, Gupta will have implicitly

---

[2]   On the facts of the case in *John Doe Co.*, the Second Circuit found that no "at issue" waiver had occurred because the element of unfairness was lacking. Doe was the subject of a federal grand jury investigation. Doe wrote a letter to the U.S. Attorney's Office conducting the investigation, in which it made claims about advice it had received from a federal agency and about its innocent state of mind. Because the letter was delivered only to the U.S. Attorney's Office, and was not seen by the grand jury, much less by a petit jury or court adjudicating Doe's claims of lack of intent, the U.S. Attorney's Office was not subjected to any unfairness as the result of receiving the letter while Doe continued to maintain the privilege. 350 F.3d at 303.

waived the privilege by asserting a claim that in fairness requires examination of protected communications that might disprove or undermine Gupta's contentions. If, for example, a defense witness were to testify at trial that he spoke to an attorney about Voyager on Gupta's behalf prior to the end of the charged conspiracy, the Government would effectively be precluded from challenging the veracity of that claim, or obtaining evidence that undermines it, because of Gupta's reliance on the attorney-client privilege. That is precisely the type of strategic use of the attorney-client privilege that the law does not permit.

As courts have held, the waiver should be tailored to remedy the prejudice to the Government. Accordingly, the Government should be permitted to (1) cross-examine the defense witness (or agents) about the content of the communications, (2) compel the testimony of the attorney (or the defendant's agents) about the content of the communications, (3) compel the production of emails and documents reflecting communications with the attorney and his law firm about the same subject matter, and (4) compel the production of other privileged documents to the extent they shed light on the timing or content of Gupta's communications with the attorney regarding Voyager.

To avoid unnecessary delay during the trial should the Court find that the defendant at some point waived the privilege, the Government respectfully asks the Court to compel the defendant and McKinsey to produce at this time the email communications between Gupta and the relevant attorneys, which would be provided to and reviewed only by a walled-off AUSA, Sarah McCallum, who has had discussions with Gupta's counsel regarding Gupta's assertion of privilege with respect to the communications of Gupta, Orman, and other purported agents of Gupta with attorneys regarding Voyager. In addition, the Government intends to write a

5

letter to the relevant law firm of the attorney with whom Orman (and perhaps others) purportedly consulted on Gupta's behalf to collect relevant documents now so that if the Court orders the production of such documents prior to or during the trial, the law firm will be prepared to produce them without delay.[3]

## II. The Court Should Preclude Certain Defense Evidence, Questioning, Comments In Opening Statements, And Argument

### A. Gupta's Plans To File A Civil Lawsuit Against Raj Rajaratnam

The Court should preclude the defendant from presenting any evidence or argument or otherwise exposing the jury to Gupta's intent and/or plans to file a civil lawsuit against Rajaratnam after the charged period of the conspiracy when such evidence sheds no light on the charged crimes. For example, Gupta's efforts in September 2009 and October 2009 — months after the charged conspiracy — to collect information and consider whether to file a lawsuit against Rajaratnam has no relevance with respect to whether Gupta committed the charged crimes months and years earlier. While the Government would not object to relevant, admissible evidence — even if such evidence related to events following the charged conspiracy — reflecting or demonstrating Gupta's relevant state of mind during the period of the charged conspiracy, such as plans and/or discussions during the charged conspiracy to file a civil lawsuit against Rajaratnam,[4] evidence that Gupta was considering whether to file a lawsuit against

---

[3] It is our understanding that neither the attorney nor the law firm at issue has represented Gupta in connection with the criminal case or the parallel SEC civil action.

[4] Depending on Gupta's defenses, evidence following the charged conspiracy, for example, that related back to the period of the charged conspiracy or shed light on the conduct during the charged conspiracy might be relevant. For example, evidence that, following the charged conspiracy, Gupta learned for the first time Rajaratnam purportedly redeemed money from Voyager during the charged conspiracy without informing Gupta would be relevant to

Rajaratnam following the charged period of the conspiracy based on information he learned *after* the end of the conspiracy sheds no light on Gupta's conduct during the charged conspiracy and thus is not relevant.

### B. Penalties Faced By The Defendant

The Court should preclude the defendant from presenting any evidence or argument or otherwise exposing the jury to the potential consequences of convicting the defendant. The Supreme Court has reiterated the "well established" rule that juries should not be permitted to consider the potential penalties faced by criminal defendants. *See Shannon* v. *United States*, 512 U.S. 573, 579 (1994); *United States* v. *Blume*, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences."). This case presents no reason for the Court to depart from this settled rule by allowing the defense to introduce information concerning potential sentences. Accordingly, the Court should preclude the parties from introducing any information — whether through jury addresses, witness examinations, or otherwise — about any of the potential consequences of conviction.

### C. Prosecutorial Motives, Conduct, and Investigative Methods

The defendant should be prohibited from raising, in any way, the Government's motives and conduct in prosecuting him and/or the Government's investigative and prosecutorial methods, including the use of wiretaps. It is well-established that the Government's motives for and conduct during the prosecution of a defendant are irrelevant to guilt or innocence and therefore cannot be presented to the jury. *See United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997); *United States v. Rosado*, 728 F.2d 89 (2d Cir. 1984). It is equally well-established that the

---

Gupta's state of mind during the charged conspiracy.

Government's techniques in investigating and prosecuting crimes are entirely irrelevant to guilt or innocent and should not be considered by the jury. *United States* v. *Saldarriaga*, 204 F.3d 50, 52-53 (2d Cir. 2000); *see also United States* v. *Martha Stewart*, 03 CR. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting the Government's motion *in limine* and holding "any evidence that raises questions of prosecutorial bias against Stewart has no bearing on the issues properly before the jury, including the credibility of cooperating witnesses"; "The defense may not argue or present evidence to the jury that tends to show that this count is an unusual or unprecedented application of the securities laws. Such evidence improperly invites the jury to make legal determinations. Those determinations are the exclusive province of the court."). The defendant remains free to impugn the weight and/or the quality of the proof that the Government actually adduces at trial to the extent that it bears on guilt or innocence, but he may not put the motivations or conduct of prosecutors or law enforcement agents in issue in order to invite the jury to acquit based on alleged governmental misconduct.

        Nor can Gupta argue that he was selectively prosecuted or singled out because the Government has not charged other people who may have engaged in similar conduct. "The issue to be determined is whether [the defendant] committed the crimes charged; not whether others may have committed uncharged crimes." *United States v. White*, No. 02 Cr. 1111 (KTD), 2003 WL 721567, at *7 (S.D.N.Y. Feb. 28, 2003). Thus, evidence or argument concerning what other people have or have not been charged with is a "waste of time and thus is totally irrelevant." *Id*. In any event, because selective prosecution is not a defense on the merits to the criminal charge itself, but one based on "defects in the institution of the prosecution," Fed. R. Crim. P. 12(b)(1), it must be asserted before trial. *United States v. Sun Myung Moon*, 718 F.2d 1210, 1229 (2d Cir.

8

1983); *United States v. Taylor*, 562 F.2d 1345, 1356 (2d Cir. 1977). Such a claim can never be properly presented to the jury, but rather should only be considered by the Court before trial. *Regan*, 103 F.3d at 1082 ("the selective prosecution defense is an issue for the court rather than the jury"); *United States v. Danielson*, No. 97 Cr. 295 (RPP), 1998 WL 226200, at *1 (S.D.N.Y. May 5, 1998) (same); *United States v. Jones*, 52 F.3d 924, 927 (11th Cir. 1995) (same); *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (same); *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973) (same).

In sum, any evidence or argument that the Government's motives in prosecuting the defendant have been improper, that the Government should not have used wiretaps or the manner in which wiretaps were obtained or used was somehow inappropriate, that the manner in which the Government obtained other evidence was improper, and/or that the defendant has been selectively prosecuted is inappropriate and should be precluded by the Court.

### D. Jury Nullification

In *United States* v. *Thomas*, 116 F.3d 606, 616 (2d Cir. 1997), the Second Circuit held that "trial courts have a duty to forestall or prevent [jury nullification], whether by firm instruction or admonition, or where it does not interfere with guaranteed rights or the need to protect the secrecy of jury deliberations, . . . by dismissal of the offending juror from the venire or jury."

As a matter of precaution, the Government asks the Court to inquire as to whether the defense intends to raise any arguments with the aim of convincing the jury that his conduct should be excused, even if criminal, for any reason. For example, Gupta should be precluded from presenting any evidence or argument or otherwise exposing the jury through opening

statements, during cross-examination, or otherwise to any of the following in seeking an acquittal: (a) Gupta's past charitable contributions, and future plans for charitable contributions; (b) Gupta's position and work for various charitable organizations; (c) the dismissal of the SEC's administrative action against him; (d) the purported damage that Gupta has suffered to his reputation and other interests following Rajaratnam's arrest on or about October 16, 2009, including his resignations from various boards of directors of companies, the scrutiny of the media, and other related events; and (e) that Gupta's family members will suffer if he is convicted.

None of these subjects, considered singly or together, is relevant to guilt or innocence.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that its motion *in limine* should be granted.

Dated:   New York, New York
         May 7, 2012

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney

                                    By: _____
                                        REED BRODSKY
                                        RICHARD TARLOWE
                                        CHRISTINE MAGDO
                                        Assistant United States Attorneys
                                        Telephone: (212) 637-2492 / 2330