UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

        - v. -                               S1 11 Cr. 907 (JSR)

RAJAT K. GUPTA

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### The Government's Opposition To Gupta's Motion *In Limine* Number One To Exclude The July 29, 2008 Telephone Conversation Between Gupta And Rajaratnam

The Government respectfully submits this memorandum of law in opposition to the defendant Rajat K. Gupta's motion *in limine* to preclude the Government from offering a recording of a July 29, 2008 telephone conversation between Gupta and his co-conspirator Raj Rajaratnam (the "July 29 Call"). Contrary to the assertions in the defendant's motion, the July 29 Call is direct evidence of the charged conspiracy in a number of respects, and is highly probative for many reasons. Subject to the Court's rulings, as the Government did during the trial against Rajaratnam, the Government presently intends to offer the entire call into evidence.

Among other things, the July 29 Call is admissible because it contains direct evidence of the conspiracy. During the call, Gupta disclosed what had taken place in the confines of a Goldman Sachs Board meeting. Gupta's disclosures during this call violated his duty to the company and its shareholders. Moreover, the call is highly probative of the nature of the relationship between Gupta and Rajaratnam during the charged conspiracy (which is particularly significant in this case given the defendant's stated intent to argue that his relationship with Rajaratnam soured during the charged conspiracy). The call shows the ease with which Gupta disclosed Goldman Sachs Board discussions in response to Rajaratnam's questions; shows that Gupta was seeking professional guidance and advice from Rajaratnam; and shows the

1

relationship of trust between these co-conspirators, as reflected by Rajaratnam's disclosure to Gupta that Rajaratnam was paying millions of dollars *"after taxes"*, *"offshore"*, and in *"cash"* to Anil Kumar, who worked at the time for McKinsey & Company ("McKinsey") and used to work under Gupta at McKinsey until Gupta retired as the Managing Director of McKinsey in late 2007. The call also is probative of Gupta's motive and intent, and provides direct evidence of several of the benefits that Gupta received as part of the insider trading scheme. In fact, immediately following Gupta's disclosure of Goldman Sachs Board discussions, Rajaratnam and Gupta discussed the value of Gupta's share of their joint investment in Voyager Capital Partners ("Voyager"), which Rajaratnam had just adjusted *upward* for Gupta *by several million dollars*. The July 29 call also includes direct evidence of other benefits specifically identified in the Indictment, such as Gupta's role in Galleon International, and Rajaratnam's contributions to New Silk Route ("NSR"), a private equity fund with over $1 billion in assets under management and of which Gupta served as Chairman during the charged conspiracy.

Accordingly, the entire conversation in the July 29 Call is highly probative of the charged conspiracy. It is not barred under either Rule 403 or Rule 404(b). Gupta's motion to preclude its admissibility should be denied.

I.     **BACKGROUND**

On January 31, 2012, the grand jury returned a Superseding Indictment against Gupta that charges one count of conspiracy to commit securities fraud and five counts of substantive securities fraud. Count One of the Indictment charges Gupta with participating with Rajaratnam, and others known and unknown, from at least in or about 2007 through in or about January 2009, in a conspiracy to defraud by disclosing material, nonpublic information ("Inside Information") relating to the Goldman Sachs Group, Inc. ("Goldman Sachs"), the Procter & Gamble Company

("P&G"), and the J.M. Smucker Company to Rajaratnam and others Galleon for the purpose of executing securities transactions on the basis of such Inside Information. (S1 Ind. ¶¶ 12-28, 30-32).

As alleged, Gupta breached his fiduciary and other duties of trust and confidence that he owed to Goldman Sachs, P&G and their shareholders. (S1 Ind. ¶ 32(a)). The Indictment alleges that he breached his duties and tipped Rajaratnam and others at Galleon because of Gupta's "personal relationship and friendship" with Rajaratnam, as well as Gupta's "numerous business dealings" with Rajaratnam. (S1 Ind. ¶ 9). With respect to their business dealings, during the relevant time period, Rajaratnam and Gupta were equity investors in an investment fund called Voyager. (S1 Ind. ¶ 9(b)). In addition, in or about 2008, Rajaratnam appointed Gupta Chairman of Galleon International, which managed funds invested primarily in Asia and other emerging markets, and awarded Gupta an equity ownership interest in Galleon International. (S1 Ind. ¶ 9(e)). At that time, Galleon International had approximately $1 billion in assets under management. (*Id.*). In 2008, Gupta met with potential Galleon investors abroad and in the United States to solicit investments for Galleon. In or about early 2008, Rajaratnam gave Gupta an ownership stake in Galleon Special Opportunities Management, which had more than $300 million in assets under management at the time. (S1 Ind. ¶ 9(f)).

Count One identifies over 25 separate overt acts undertaken in furtherance of the conspiracy. Among other overt acts, the Indictment alleges that "[o]n or about July 29, 2008, at approximately 5:39 p.m., GUPTA spoke by telephone with Rajaratnam and disclosed information that GUPTA had learned during a meeting of the Goldman Sachs Board." (S1 Ind. ¶ 33(l)). As proof of this overt act, the Government seeks to offer at trial the entire recording of the July 29 Call. (*See* Exhibit B to the declaration of Stephen M. Sinaiko) (hereinafter "7/29/08

Tr.").

In the early part of the July 29 Call, Gupta revealed to Rajaratnam confidential strategic discussions and deliberations of the Goldman Sachs Board of Directors. Rajaratnam told Gupta that "there's a rumor, that Goldman might look to buy a commercial bank," and then asked Gupta whether he had "heard anything along that line?" Without hesitation, Gupta responded:[1]

> Yeah. This was a big discussion at the board meeting . . . on whether we . . . [b]uy a commercial bank. And, you know it was a uh, divided discussion in the board. . . . I think more people saying why, because in essence it's a low return business and while yeah it may be interesting to develop a deposit base which is a low cost source of funding . . . uh, you know, what we should probably explore more is, I mean, we aren't having trouble funding ourselves but, you know we should explore more global sources of funding. And perhaps even you know, uh, insurance or other things which also are a low uh cost, also. . . . Now, having said all this . . . they are an opportunistic group, so . . . [i]f Wachovia was a good deal and they, you know, it's quite conceivable they'd come and say let's go buy Wachovia . . . [o]r even AIG. Yeah. . . . AIG, it was definitely on, in, in, in the discussion . . . mix. Um, and you know, their view was actually, which has proven to be wrong, their view was very bearish on the commercial banks, but uh obviously, the commercial banks have had a pop in the last. . . . Uh, so I would be extremely surprised if . . . [there was] [a]nything imminent."

---

[1] For purposes of focusing on Gupta's statements, we have removed Rajaratnam's statements; those can be found, of course, in Sinaiko Decl., Exhibit B.

(7/29/08 Tr. at 2-4).[2]

Immediately after Gupta disclosed Goldman Sachs's Board discussions to Rajaratnam, in a portion of the call the defendant overlooks, the conversation turned to Voyager, Gupta's joint investment with Rajaratnam, and more specifically, an upward adjustment that Rajaratnam agreed to make to the value of Gupta's stake in Voyager. Rajaratnam said, "I'm gonna get [a Galleon employee] to just uh, write the balances, if you want." Gupta replied, "Well, what I did is I, you know, uh, as we had agreed, I just did the calculations for the (UI)." Rajaratnam then told Gupta that the employee will just certify that and (UI), send you uh . . . I mean, I, I'll you know, I'll do it on my Galleon letterhead." The evidence at trial will show that Rajaratnam agreed to increase the value of Gupta's stake by approximately $4 million, and shortly after the July 29 Call, Rajaratnam had a Galleon employee send Gupta a letter, on Galleon letterhead, memorializing the increased value of Gupta's stake in Voyager.

Later in the July 29 Call, Rajaratnam and Gupta discussed Kumar. Kumar, who has pled guilty pursuant to a cooperation agreement, provided Rajaratnam with inside information relating to his McKinsey clients (including AMD) in exchange for money that Rajaratnam sent in cash, tax-free to an offshore account in someone else's name. During the July 29 Call, Rajaratnam stated: "you, know, honestly, Rajat, I'm giving him a million dollars a year for doing literally nothing. Just because . . .", to which Gupta responded, "I know . . . I think you're being very generous. . . . But he should sometimes say thank you for that, you know?" (7/29/08 Tr. at 6-7).

---

[2] Significantly, the live recording is even more powerful than the written transcript. The manner in which Rajaratnam asks Gupta for information about Goldman Sachs, and the ease with which Gupta responds and discloses Goldman Sachs Board discussions without hesitation, are revealing.

Gupta's tone, lack of surprise, and response reflect that he knew that Rajaratnam was giving Kumar the money. Rajaratnam stated shortly thereafter that "for the last three or four, four or five years I've given him [Kumar] a million bucks a year, right?", to which Gupta responds "Yeah. Yeah." Rajaratnam then added, "After taxes, offshore. Cash," to which Gupta responded, "Yeah. Yeah." Rajaratnam then complained that Kumar said he was moving to New York to be with NSR and "you guys", and it was going to be "expensive" and Rajaratnam felt that Kumar was "putting a stake through" his stomach "because instead of saying thank you for giving me 5 million dollars after taxes", at which point Gupta interrupted, agreed by stating "yeah" and then also complained about Kumar. (7/29/08 Tr. at 9).

During the other portions of the July 29 Call, Gupta and Rajaratnam discuss, among other things, Rajaratnam's contributions to NSR, which was important to Gupta as he was the Chairman at the time of this private equity fund with over $1 billion under management, Gupta's contributions to Galleon International and Galleon generally, Rajaratnam's professional advice to Gupta, Gupta's offer to assist Galleon and Rajaratnam, and Rajaratnam's statements about his plan to build Galleon into a $10 billion company in the near future. (7/29/08 Tr. 7-26).

## II. Discussion

### A. The July 29 Is Admissible As Direct Proof of the Charged Conspiracy

The July 29 Call is admissible because Gupta's recorded conversation with Rajaratnam provides direct evidence of the charged conspiracy. The July 29 Call occurred during the charged conspiracy, and it was an overt act in furtherance of the charged conspiracy.

The July 29 Call is probative and relevant for a number of reasons. For example, each of the following parts of Gupta's conversation with Rajaratnam during this call make the

allegations --- that Gupta and Rajaratnam had an unlawful agreement whereby Gupta would disclose material, nonpublic information to Rajaratnam, in violation of Gupta's duties, for purposes of trading on it --- more probable:

(1) During the call, Gupta disclosed information from a Goldman Sachs Board meeting to Rajaratnam.

(2) Gupta's disclosures of Goldman Sachs Board discussions during this call violated his duty to the company and its shareholders. The Government proffers that it will demonstrate through witness testimony and Goldman Sachs policies and procedures that Gupta violated his duty by disclosing Board discussions to Rajaratnam, regardless of the materiality of the information and/or analyst reports reflecting that certain members of management were informing certain analysts that it was unlikely that Goldman Sachs would acquire a commercial bank.

(3) Gupta's disclosures during the call included information that was *not* reflected in the analyst reports upon which Gupta relies for the proposition that Gupta only disclosed publicly available information to Rajaratnam. For example, Gupta disclosed that the Goldman Sachs Board discussed whether to acquire an insurance company, and then Gupta confirmed that AIG was in the discussion mix. (7/29/08 Tr. 3-4). None of the analyst reports upon which Gupta relies makes any reference to the potential acquisition of an insurance company by Goldman Sachs or specific names of companies under consideration, including AIG.

(4) The manner in which Gupta disclosed Goldman Sachs Board discussions responding to Rajaratnam's questions without hesitation during this call reflect the nature of their relationship during the charged conspiracy, and Gupta's state of mind.

(5) Immediately following Gupta's disclosure of Goldman Sachs Board discussions, Rajaratnam and Gupta discussed that Rajaratnam was going to send Gupta a letter on Galleon letterhead with the new value of Gupta's share of their joint investment in Voyager, which Rajaratnam had just adjusted *upward* for Gupta *by several million dollars*.

(6) Rajaratnam's statements during the call about paying millions of dollars "*after taxes*", "*offshore*", and in "*cash*" to Kumar who worked at McKinsey, and Gupta's affirmative responses, reflect (among other things) the nature of Gupta's relationship with Rajaratnam. In addition, among other things, this part of the conversation also demonstrates Rajaratnam's methods of doing business, and Gupta's state of mind in terms of Gupta's knowledge of those methods.

(7) Rajaratnam's statements during the call help demonstrate Rajaratnam's valuable contributions to Gupta's private equity firm (NSR) during the charged conspiracy, which is one of the alleged benefits to Gupta.

(8) Rajaratnam's professional advice to Gupta throughout the call reflects (among other things) the nature of their relationship.

(9) Gupta's statements offering his assistance to Galleon International, Galleon, and Rajaratnam reflect (among other things) the nature of their relationship, and provide evidence of another one of the alleged benefits to Gupta.

(10) Rajaratnam's statements to Gupta about building Galleon Group into a ten-billion dollar company reflect (among other things) reasons that Gupta was motivated to tip Rajaratnam in exchange for a larger role and stake in Galleon.

8

Gupta's first argument that the call is "not direct evidence of the insider trading offenses charged in the superseding indictment because it does not tend to prove Mr. Gupta's disclosure of material, nonpublic information in breach of his fiduciary duty to Goldman, and is unrelated to any trading by Rajaratnam," (Gupta Mot. *In Limine* Number One, Dkt. 58 at 3), is meritless for all of the reasons stated above. Further, Gupta can be found guilty of the conspiracy count even if Gupta did not disclose material, nonpublic information and even if Rajaratnam did not trade. *Salinas* v. *United States*, 522 U.S. 52, 65 (1997) ("a conspiracy may exist and be punished whether or not the substantive crime ensues"). Moreover, an overt act in and of itself need not be criminal. *Yates* v. *United States*, 354 U.S. 298, 334 (1957).

Gupta's second argument that his disclosures were consistent with Goldman's interests, (Gupta Mot. *In Limine* Number One, Dkt. 58 at 3-4), are belied by his own statements during the conversation with Rajaratnam and the prior testimony of the Chief Executive Officer of Goldman Sachs, Lloyd Blankfein, during the Rajaratnam trial and his anticipated testimony during this trial. Moreover, it is an argument the defendant can make to the jury, but does not affect the admissibility of the call.

Gupta's third argument that the information he conveyed to Rajaratnam during the July 29 Call was not material, (Gupta Mot. *In Limine* Number One, Dkt. 58 at 4-5), overlooks once again that the information need not be material for Gupta to be guilty of the charged conspiracy.

Gupta's fourth argument that the information he conveyed to Rajaratnam during the July 29 Call was not "nonpublic," (Gupta Mot. *In Limine* Number One, Dkt. 58 at 4-5), is not only factually inaccurate with respect to, for example, Gupta's statements about Board discussions relating to Goldman Sachs's potential acquisition of an insurance company (and confirming AIG

9

was in the discussion mix), but again overlooks that the information need not be non-public for Gupta to be guilty of the charged conspiracy.

### B. The July 29 Call Is Also Admissible Under Rule 404(b)

Gupta's argument that the July 29 Call is inadmissible "propensity evidence" under Rule 404(b), (Gupta Mot. *In Limine* Number One, Dkt. 58 at 6-7), misses the mark. First, as explained above, the July 29 Call is not propensity evidence, but rather direct evidence of the charged conspiracy. Second, the July 29 Call is admissible and not considered "other crimes" or "other acts" under Rule 404(b) because it arises out same series of events as the charged conspiracy, it is inextricably intertwined with the evidence regarding the charged conspiracy, and it is necessary to complete the story of the crime on trial. *United States* v. *Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997).

Third, Gupta's assertion that the Government used the "other acts" in the July 29 Call to argue his "propensity" to commit crimes with Rajaratnam during the Rajaratnam trial, (Gupta Mot. *In Limine* Number One, Dkt. 58 at 2, 6-7), does not withstand scrutiny. To begin with, the Government argued that the call was an act in furtherance of the charged conspiracy in that case and thus was not an "other act" of the defendant. Further, the Government's statements in summation at the Rajaratnam trial relating to this call were fair and proper argument. The Government argued correctly that Rajaratnam's question to Gupta about what he heard about whether Goldman Sachs was going to acquire a commercial bank, Gupta's reaction of answering without hesitation, and Rajaratnam's non-surprised response reflected a prior course of dealings between these men such that this was not the first time that Rajaratnam had asked Gupta for information relating to Goldman Sachs, and this was not the first time Gupta provided it. (Gupta

10

Mot. *In Limine* Number One, Dkt. 58, Exh. C at 5243-44.)

Finally, even if Rule 404(b) applied, which it does not, the July 29 Call would be proper to show Gupta's motive, opportunity, intent, knowledge, and the absence of mistake or accident, as well as the nature of the relationship and mutual trust between Gupta and Rajaratnam. *See, e.g., United States* v. *Basciano*, 2012 WL 493401, at *4 (2d Cir. Feb. 16, 2012) (Evidence of defendant's involved in uncharged murder admitted for purposes of telling the complete story behind charged crimes, the development of criminal relationships, to illustrate the mutual trust between co-conspirators, and to corroborate the testimony of cooperating witnesses.).

### C.     The July 29 Call Is Not Unfairly Prejudicial Under Rule 403.

Gupta's final argument is that the probative value of the July 29 Call is substantially outweighed by the unfair or undue prejudice under Rule 403. Gupta is wrong.

First, as explained above and reflected in the recording, Gupta's conversation with Rajaratnam is highly probative of the charged conspiracy. Second, the prejudice of which Gupta complains are the fair and reasonable inferences drawn from the July 29 Call. Such inferences include, for example, that Gupta disclosed information to Rajaratnam during the call that violated Goldman Sachs policies; that Gupta disclosed information that was not public; and that the manner and tone in which Rajaratnam asked and Gupta answered regarding a rumor about Goldman Sachs acquiring a commercial bank reflect the nature of their relationship and Gupta's state of mind. It is fair argument for the Government to argue that multiple statements by Gupta and Rajaratnam during the July 29 Call were overt acts in furtherance of the charged conspiracy. There is no unfair or undue prejudice arising from the July 29 Call.

Finally, Gupta's argument that the Court should exclude the exchange between Gupta and Rajaratnam relating to Rajaratnam's payments to Kumar offshore, in cash, after-taxes is meritless. Rajaratnam's statements to Gupta are probative in a number of respects. For example, they demonstrate a strong mutual trust between Rajaratnam and Gupta during the charged conspiracy. Their trust was so strong that Gupta knew that Rajaratnam was paying Kumar millions of dollars in violation of U.S. tax law and McKinsey's policies. The evidence will show that, as the former head of McKinsey, Gupta knew that it was against McKinsey policy for Kumar to receive millions of dollars offshore for any kind of non-McKinsey work and for Kumar not to pay U.S. taxes on income. In addition, among other things, a fair inference can be drawn from the conversation regarding Gupta's state of mind about how Rajaratnam conducted business and the methods he used to do so. Gupta, of course, can argue other inferences should be drawn from the conversation, but they are certainly probative of Rajaratnam's relationship with Gupta, and Gupta's state of mind.

Nothing in the July 29 Call is likely to inflame the passions of the jury or excite their emotions. The Government will not, and need not, ascribe guilt based on Gupta's mere association with Rajaratnam and Kumar. Rather, the Government seeks only to argue the fair inferences from the call regarding such issues as Gupta's knowledge, intent, motive, and relationship with Rajaratnam, and Gupta will have every opportunity to argue the inferences he believes the evidence warrants. Any risk of unfair prejudice, however remote, can be remedied with a proper limiting instruction. *United States* v. *Paulino*, 445 F.3d 211, 223 (2d Cir. 2006; *United States* v. *Downing*, 297 F.3d 52, 59 (2d Cir. 2002).

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court deny the defendant's motion *in limine* to exclude the July 29, 2008 recording of the telephone conversation between Gupta and Rajaratnam.

Dated: May 14, 2012
      New York, New York

                         Respectfully submitted,
                          PREET BHARARA
                          United States Attorney

           By:   */s/ Reed Brodsky*
                REED BRODSKY
                RICHARD TARLOWE
                AVI WEITZMAN
                Assistant U.S. Attorneys
                212-637-2492/2330/1205