UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
                               :

UNITED STATES OF AMERICA

                               :    No. 11 Cr. 907 (JSR)

           - against -

                               :

RAJAT K. GUPTA,

                               :

                Defendant.

                               :

———————————————————————— x

# DEFENDANT RAJAT K. GUPTA'S MEMORANDUM
# IN OPPOSITION TO THE REQUEST FOR RESTITUTION

Richard J. Davis, Esq.
415 Madison Avenue
11th Floor
New York, New York  10017
(646) 553-1365

Attorney for Rajat K. Gupta

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................ 1

I.    BOTH GOLDMAN SACHS AND THE GOVERNMENT HAVE FAILED TO
      MAKE A SHOWING ENTITLING GOLDMAN TO RESTITUTION FOR
      LEGAL FEES ................................................................................ 2

      A.    Relevant Law ............................................................................ 2

      B.    The Restitution Request for Legal Fees Should Be Denied Because
            Goldman and the Government Have Failed To Meet the Statutory Burden
            of Proof .................................................................................. 4

      C.    Goldman Is Requesting Reimbursement for Legal Work That Is Not
            Recoverable Under the Statute and Second Circuit Authority ................ 9

            1.    Goldman Is Not Entitled to Reimbursement for Fees Incurred in
                  Connection with SEC v. Gupta or U.S. v. Rajaratnam .................. 10

            2.    Goldman Is Not Entitled to Reimbursement of a Number of the
                  Other Submitted Fees ........................................................... 14

      D.    Goldman Is Not Entitled to Reimbursement for Fees Associated with
            Acquitted Conduct or Unproven Overt Acts ................................... 16

      E.    The Restitution Request Should Be Denied Because Determining
            Goldman's Entitlement Requires Unduly Complicated Fact
            Determinations ........................................................................ 18

II.   GOLDMAN IS NOT ENTITLED TO RESTITUTION FOR THE
      COMPENSATION PAID TO MR. GUPTA ............................................ 20

CONCLUSION ..................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Hughey v. United States,*
    495 U.S. 411 (1990)....................................................................................16

*United States v. Akande,*
    200 F.3d 136 (3d Cir. 1999)........................................................................16

*United States v. Amato,*
    540 F.3d 153 (2d Cir. 2008)........................................................................15

*United States v. Bahel,*
    662 F.3d 610 (2d Cir. 2011)..........................................................................9

*United States v. Battista,*
    575 F.3d 226 (2d Cir. 2009)................................................................. *passim*

*United States v. Cuti,*
    08 Cr. 972 (DAB), 2011 WL 3585988 (S.D.N.Y. July 29, 2011)...................6, 20

*United States v. Donaghy,*
    570 F. Supp. 2d 411 (E.D.N.Y. 2008) (Amon, J.), *aff'd, United States v. Battista,* 575
    F.3d 226 (2d Cir. 2009)........................................................................3, 5, 9, 16

*United States v. Kane,*
    944 F.2d 1406 (7th Cir. 1991) ...............................................................17, 18

*United States v. Kones,*
    77 F.3d 66 (3d Cir. 1996)............................................................................19

*United States v. Levis,*
    08 Cr. 181 (TPG), 2011 WL 497958 (S.D.N.Y. Feb. 10, 2011) ............................6

*United States v. Papagno,*
    639 F.3d 1093 (D.C. Cir. 2011) ........................................................... *passim*

*United States v. Skowron,*
    839 F. Supp. 2d 740 (S.D.N.Y. 2012)..........................................................12

*United States v. Weitzman,*
    09 Cr. 989 (LTS), 2010 WL 3912735 (S.D.N.Y. Sept. 15, 2010)................3, 9, 14

STATUTES

15 U.S.C. § 7246.........................................................................................20

18 U.S.C. § 371 .................................................................................................................2

18 U.S.C. § 3663(a)(2) .....................................................................................................16

18 U.S.C. § 3663A ............................................................................................................2

18 U.S.C. § 3663A(b)(4) ...........................................................................................*passim*

18 U.S.C. § 3663A(c)(1) ....................................................................................................2

18 U.S.C. § 3663A(c)(3)(B) .............................................................................................19

18 U.S.C. § 3664 ...............................................................................................................2

## PRELIMINARY STATEMENT

Mr. Gupta respectfully submits this memorandum in opposition to the application of the government and The Goldman Sachs Group, Inc. ("Goldman") for restitution of legal fees and other expenses of nearly $7 million.

Under the applicable statute and governing Second Circuit case law, a victim is entitled to restitution for legal fees and expenses only to the extent the victim establishes that these costs were necessarily incurred during participation in the government's investigation or prosecution of the offense of conviction, and then only if "unduly complicated determinations of fact" are not required.  This application fails to satisfy either requirement.

First, rather than identifying and submitting competent evidence of the legal fees that could be said to fit within this narrow category of recoverable expenses (*e.g.*, billing records and attorney affidavits detailing the specific work done), Goldman has simply submitted all of its billing records over a three-year period – 542 pages worth, containing large numbers of time entries on each page, resulting in many thousands of such entries, many of which refer to multiple tasks performed.  Goldman has thus not even begun to satisfy its burden of showing the fees are recoverable – reason alone to refuse to order restitution of any legal fees, but even more so because the failure to provide detailed support for the request renders the determination of any restitution unduly complex.

Second, it is clear, even on the basis of these records and without further explication, that Goldman is requesting reimbursement of fees for work that was plainly not necessarily incurred during "participation in the investigation or prosecution" of Mr. Gupta, including:

- More than $3 million of fees antedating the government's criminal investigation of Mr. Gupta becoming active.

- Substantial fees for work on SEC matters, both before and after the *Rajaratnam* trial, including the SEC administrative and federal court cases against Mr. Gupta.

- Fees relating to the civil Section 16(b) case – which is not only outside the statute, but a matter as to which Mr. Gupta prevailed.

- Work done over the last five months, after the criminal case against Mr. Gupta *ended*. This could hardly have been participation in the prosecution.

- Fees for researching and preparing this restitution motion.

- Fees relating to Goldman's analysis of indemnification and advancement of Mr. Gupta's legal fees.

For all of these reasons, the Court should deny Goldman's request for restitution of its legal fees.

## I.   BOTH GOLDMAN SACHS AND THE GOVERNMENT HAVE FAILED TO MAKE A SHOWING ENTITLING GOLDMAN TO RESTITUTION FOR LEGAL FEES

### A.   Relevant Law

Goldman Sachs seeks restitution pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A & 3664.  The MVRA applies at sentencing after conviction of any "offense against property under [Title 18] . . . including any offense committed by fraud or deceit . . . and in which an identifiable victim or victims has suffered a . . . pecuniary loss." 18 U.S.C. § 3663A(c)(1)(A)(ii) & (c)(1)(B).  The only Title 18 offense of which Mr. Gupta was convicted is conspiracy, 18 U.S.C. § 371.

More specifically, Goldman seeks restitution for its legal fees pursuant to 18 U.S.C. § 3663A(b)(4).  That section provides for reimbursement of, among other items, "necessary . . . other expenses incurred during participation in the investigation or prosecution of

the offense or attendance at proceedings related to the offense." The Second Circuit has held that a victim's attorneys' fees will be deemed reimbursable "other expenses" only if incurred in "assisting the government in the investigation and prosecution of the defendants' criminal offenses," if "necessary," and if they do not require "unduly complicated determinations of fact." *United States v. Battista*, 575 F.3d 226, 233-34 (2d Cir. 2009). Moreover, an application for restitution should be supported by appropriate affidavits and documentation itemizing and explaining how the fees were necessarily incurred in providing such assistance to the government. *United States v. Donaghy*, 570 F. Supp. 2d 411, 419, 431 (E.D.N.Y. 2008) (Amon, J.), *aff'd*, *United States v. Battista*, 575 F.3d 226 (2d Cir. 2009). Under *Battista*, attorneys' fees "not directly related to the assistance . . . provided to the government in its investigation and prosecution of the criminal offense[ ]" are not eligible for reimbursement and will be rejected. *Id.* at 234.

Simply stated, Goldman is entitled to restitution of only those fees it can demonstrate were necessarily incurred in connection with specific requests by the government (identifying and providing documents pursuant to subpoena is one obvious example), or were otherwise required to be done (*e.g.*, preparing witnesses for trial testimony and being in court during their testimony), in the investigation or prosecution of the *Gupta* case. *See United States v. Papagno*, 639 F.3d 1093, 1100 (D.C. Cir. 2011) (it is "difficult – indeed, impossible" for expenses incurred during an internal investigation conducted on behalf of the victim but "neither required nor requested by criminal investigators [to be] expense[s] *necessary*" to participation in the government's efforts) (emphasis in original). For a court to award "legal fees falling outside the MVRA expense authorization [in § 3663A(b)(4)] . . . as consequential damages is inconsistent with the Second Circuit's analysis in *Battista*." *United States v. Weitzman*, 09 Cr.

989 (LTS), 2010 WL 3912735 at *1 (S.D.N.Y. Sept. 15, 2010); *see also Papagno*, 639 F.3d at 1100 ("This is not a consequential damages statute.").[1]

**B.      The Restitution Request for Legal Fees Should Be Denied Because Goldman and the Government Have Failed To Meet the Statutory Burden of Proof**

Mr. Gupta first learned that the government was seeking restitution on Goldman's behalf through the revised Presentence Report and the government's Sentencing Memorandum, both of which he received one week before sentencing on October 17, 2012.  Rather than even attempt to meet the statutory requirements for restitution, the government simply advised that Goldman was claiming an entitlement to all its legal fees incurred in the course of proceedings arising from Mr. Gupta's conduct, plus 25% of Mr. Gupta's cash director compensation, in a total amount of $6,780,369.34.  In his Response, Mr. Gupta put the government and Goldman on notice that, in his view, an unsupported request for almost $7 million in "undifferentiated legal fees" failed to meet the government's "burden of demonstrating the amount of the loss sustained by a victim."  *See* Resp., Doc. No. 125, at 10-11.  On November 28, 2012, the Court directed Goldman to produce the billing records underlying its restitution claim.  Yet its recent production of more than three years of voluminous billing records – indeed, what appears to be *all* of the

---

[1]  The government, in a single paragraph in its Sentencing Memorandum, stated only that Goldman was a victim seeking restitution "which Goldman Sachs has advised the Government consists of (1) the legal fees and related costs Goldman Sachs incurred in the course of investigations and legal proceedings arising from Gupta's conduct and (2) a portion (namely, 25%) of the compensation that Goldman Sachs paid to Gupta as a Director." Sent. Mem., Doc. No. 124, at 12-13.  That is, the government offered neither factual nor legal support for Goldman's restitution claim, and invoked an incorrect predicate for restitution – "incurred in the course of investigations and legal proceedings arising from Gupta's conduct."

bills, with no effort to organize the work in categories, or otherwise segregate what is recoverable from what is not – does not in any way meet the requisite burden of proof.[2]

The application remains a request for *all* legal fees Goldman purportedly incurred bearing any connection to Mr. Gupta in a three-year period, from December 2009 through November 2012.  The individual time entries recite tasks performed, but provide no indication of whether or how the fees were "necessarily . . . incurred during participation" in the government's investigation and prosecution of the criminal conspiracy of which Mr. Gupta was convicted, as opposed to various other matters for which restitution is not available under the MVRA (as explained below in Sections C and D).  Nor has Goldman supplemented the bills with, for example, affidavits from outside counsel that would allow the Court to differentiate between reimbursable and non-reimbursable expenses – as the case law makes clear it should have done.

The shortcomings of Goldman's application are illustrated by comparison with the submissions required in *United States v. Donaghy*, the leading case setting forth the victim's obligations in making out its case for restitution of legal fees.  570 F. Supp. 2d 411 (E.D.N.Y. 2008).  In that case, the National Basketball Association sought restitution from a referee convicted of a gambling conspiracy.  In its second submission in that case, the NBA "itemized the amount of money it was seeking for each category of what it believed were compensable costs and expenses and provided some documentation in support of its request" to the court.  *Id.*

---

[2]  The billing records as originally provided did not supply the information necessary for a determination of how much particular legal services cost.  In response to Mr. Gupta's request, Goldman thereafter provided billing rates associated with individual timekeepers on December 6, 2012.

The 500-plus pages of billing records or billing rate information Goldman did produce (and which it designated as confidential under the protective order) are not being submitted in conjunction with this Memorandum.  Mr. Gupta is of course prepared to provide these materials to the Court at whatever time and in whatever manner it desires.

at 419. This categorization and itemization was sufficiently detailed to permit Judge Amon to reject certain requests as not reimbursable because they were not incurred in the course of assisting the government. *Id.* She then "directed the NBA to submit further documentation in support of its request," including affidavits that "explain[ed] what each attorney and paralegal for whom restitution [was] sought was doing and how it related to assisting the government in the prosecution of the[ ] offenses. In some cases, a given attorney or paralegal . . . explained that only a portion of a billing entry was dedicated to assisting the government, and [gave] his or her best estimate as to how many hours [were] recoverable." *Id.* at 419, 431. Thereafter, Judge Amon further ordered the NBA to "organize its data and coordinate the affidavits with the time sheets," explaining that, without further organization, "the NBA's submission would require the Court and counsel for the defendant to engage in time consuming and unnecessary work attempting to go back to the voluminous time sheets earlier produced to coordinate the sheets with the affidavits. This effort must in the first instance be undertaken by the NBA." (Exh. A, Order, *Donaghy*, 07 Cr. 587 (CBA) (E.D.N.Y. June 30, 2008), Doc. No. 32, at 1).[3] The government and Goldman have failed to take any of these steps, which are a practical necessity for the Court in determining an award under § 3663A(b)(4).

Goldman's fee documentation fails even to begin to meet its and the government's burden of providing the parties and the Court with a basis for determining the amount of its alleged entitlement. In a case like this one, where it is disputed whether Goldman's legal fees were "necessary" and "incurred during participation" in the government's

---

[3] *See also United States v. Cuti*, 08 Cr. 972 (DAB), 2011 WL 3585988, at *7 (S.D.N.Y. July 29, 2011) (noting that declaration of victims' lawyer was a "valiant[] attempt[] to segregate costs properly," though ultimately unsatisfactory); *United States v. Levis*, 08 Cr. 181 (TPG), 2011 WL 497958, at *2 (S.D.N.Y. Feb. 10, 2011) ("In the declaration . . . [the victim] parses out the amount of fees paid in connection with Levis's criminal case.")

investigation and prosecution of Mr. Gupta, it is incumbent upon Goldman to supply records that explain, for each category of work, why it did what it did. On the present record, "meticulously pars[ing] out the fees and costs submitted . . . [to] determin[e] whether . . . [various expenses] were incurred while assisting the government," *Battista*, 575 F.3d at 234, would be guesswork.

Moreover, it is clear from even the little information on the face of the time records that the bulk of the restitution Goldman seeks is not available under the statute. More than $3 million of the submitted fees and expenses were incurred prior to the conclusion of the trial in *United States v. Rajaratnam* in May 2011. But it was only "*after* the Rajaratnam trial," by the government's own admission, that "the USAO's criminal investigation into Gupta's conduct kicked into high gear." Ltr., Doc. No. 34, at 4 (emphasis added). These fees are not reimbursable by Mr. Gupta. *See United States v. Papagno*, 639 F.3d 1093, 1099 (D.C. Cir. 2011) (it would be "anomalous at best" to order reimbursement for a victim's expenses that preceded the criminal investigation, as "one cannot ordinarily be participating in something that has not yet begun"). Moreover, based upon the descriptions in the time records, the substantial majority of the fees incurred prior to the *Rajaratnam* trial were actually incurred in relation to (i) the SEC's investigation, and (ii) the *Rajaratnam* case.[4]

---

[4] In the context of evaluating Mr. Gupta's *Brady* requests, the Court concluded that the government had an obligation to review certain SEC-prepared memoranda in relation to 44 USAO-SEC witness interviews. Mem. & Op., Doc. No. 44. These joint witness interviews all took place after the *Rajaratnam* trial from late spring 2011 through early 2012. In addition, the Court noted that "[a]n investigation may be joint for some purposes; it may be independent for others," and thus that its holding "[did] not mean that all of the documents the SEC prepared and accumulated in its investigation of Gupta are part of the joint investigation." *Id.* at 7-8. Moreover, the fact that there were some joint interviews with the USAO does not mean that any of the discovery that subsequently took place in *SEC v. Gupta* involved "participation" in the government's criminal case. And the government has argued that in all other respects, the two investigations were "separate and independent," leading the SEC to file "an administrative action against Mr. Gupta [on March 1, 2011,] one week before Rajaratnam's criminal trial over the

As for the bills reflecting work done after the *Rajaratnam* trial, and as discussed below, Goldman seeks reimbursement for other substantial fees unrelated to participation in the investigation or prosecution of Mr. Gupta, and thus not authorized by the statute, including:

> (i) fees incurred in relation to various parallel investigations and proceedings, including the SEC's administrative action; the SEC's subsequent claim in *SEC v. Gupta*; *Mercer v. Gupta*, the civil § 16(b) action brought against Mr. Gupta; and various investigations into possible wrongdoing by other Goldman personnel (*see, e.g.*, GS-GUPR 00234; 00256; 00284; 00289; 00327);

> (ii) fees incurred by Goldman purely as a third-party witness, such as supplying Goldman broker-dealer records of Galleon trading in securities other than those of Goldman, including P&G (*see, e.g.*, GS-GUPR 00313; 00341); and

> (ii) fees for work on matters not only not "necessary" to the government's efforts, but utterly unrelated to the investigation and prosecution of Mr. Gupta, for example:  consideration of whether to seek restitution from Rajaratnam; review of the bills submitted by Mr. Gupta for his legal fees; and allocating responsibility with P&G for fee advancement to Mr. Gupta. (*See, e.g.*, GS-GUPR 00234; 00256).

Moreover, more than $300,000 in fees for which Goldman seeks restitution were accrued after the verdict against Mr. Gupta in mid-June 2012.  There is no explanation for how these fees could have been necessary to the prosecution after it had concluded.  Indeed, a significant portion of that amount is attributable to Goldman's preparation and pursuit of this restitution application.

---

USAO's objection," and well before the criminal investigation became active and led to charges nearly eight months later.  Ltr., Doc. No. 32, at 1; Ltr., Doc. No. 24, at 4).  In any event, the burden is on the government and Goldman to demonstrate what portion of the legal work performed prior to the *Rajaratnam* trial, if any, consisted of participation in the criminal investigation.

The government has failed to meet its burden in support of the application for restitution, and Mr. Gupta respectfully submits that the Court should deny the application for reimbursement of Goldman's legal fees in its entirety.

### C.    Goldman Is Requesting Reimbursement for Legal Work That Is Not Recoverable Under the Statute and Second Circuit Authority

Applying the clear statutory language, courts in this Circuit have not hesitated to hold that certain expenses sought by victims are beyond the scope of reimbursement provided by the MVRA.  In *United States v. Donaghy*, Judge Amon rejected the NBA's request for legal fees it incurred during an internal investigation, "in particular its requests for the expenses associated with the interviews of 57 referees" to determine the scope of Donaghy's wrongdoing, on the ground that the fees "were not incurred in the course of assisting the government with its investigation into or prosecution of Donaghy's offenses."  570 F. Supp. 2d at 419.  She also properly rejected the NBA's request for reimbursement of legal "fees associated with counseling the NBA on its public response to Donaghy's guilty plea" – notwithstanding the fact that, as the Court of Appeals recognized, the defendant's conduct "undoubtedly damaged the reputation of the NBA" and caused the league to incur "significant" related expenses. *See Battista*, 575 F.3d at 234. The Second Circuit affirmed, leaving no doubt that restitution is not available for "attorneys' fees not directly related to the assistance . . . provided to the government," *id.*, a position which the government itself has accepted.[5]

---

[5]   In *Weitzman*, a victim sought restitution for fees incurred during her lawyers' private investigation of the fraud against her. (Exh. B, Ltr., *Weitzman*, 09 Cr. 989 (LTS) (S.D.N.Y. Aug. 3, 2010), Doc. No. 66, at 2-3).  The government took the position that, "[i]n light of the Second Circuit's focus . . . on the link between [reimbursable] expenses and the victim's participation in the investigation and prosecution of the offense, . . . it is unclear that such private investigative expenses should be included in restitution." *Id.* (internal quotations and citation omitted).  Judge Swain ultimately excluded from the restitution order "those fees requested which are related only

Yet in the face of this clear Second Circuit authority, Goldman seeks reimbursement for just such fees.  Accordingly, if the application is not denied in its entirety, the Court should disallow the categories of fees and costs for which restitution is not allowed, and should require Goldman to resubmit only the portions of time entries which Goldman can, by competent evidence, demonstrate are recoverable under the statute.[6]

### 1.   Goldman Is Not Entitled to Reimbursement for Fees Incurred in Connection with *SEC v. Gupta* or *U.S. v. Rajaratnam*

Goldman is not entitled to restitution for legal fees it incurred relating to the SEC's administrative action or the federal court *SEC v. Gupta* case, or to the criminal investigation and prosecution of *United States v. Rajaratnam*.  Fees related to the SEC matters and the *Rajaratnam* case account for a substantial portion of the almost $7 million Goldman is requesting.  In addition to the over $3 million in fees incurred prior to end of the *Rajaratnam* trial, as well as approximately $300,000 of fees incurred *after* the *Gupta* trial (*see* p. 14, *infra*), all of which are presumptively not reimbursable here, the bills that postdate the *Rajaratnam* trial are shot through with very large numbers of expenses incurred in relation to SEC matters.

---

consequentially to the investigation or prosecution of the criminal case against Defendant (*i.e.*, those incurred solely in connection with the civil litigation, or after the sentencing hearing in this matter . . . )." *Id.* at *1.  In *United States v. Bahel*, the government argued that the United Nations should be reimbursed for $994,783.10 of "fees incurred by the UN in responding to the Government's investigation and prosecution," including "complying with requests for documents," and "attending interviews of UN witnesses," but that the UN should not be reimbursed for $794,198.80 in relation to "an internal investigation that was conducted by the UN's Procurement Fraud Task Force."  (Exh. C, Ltr., *United States v. Bahel*, 06 Cr. 918 (TPG) (S.D.N.Y. Apr. 8, 2008), Doc. No. 94, at 16).  Judge Griesa awarded $846,067 in legal fees for the UN's participatory expenses.  The Second Circuit affirmed in *United States v. Bahel*, 662 F.3d 610 (2d Cir. 2011); *see also Papagno*, 639 F.3d at 1100 (costs of an internal investigation neither required nor requested by criminal investigators or prosecutors could not have been an expense "necessary" to "participation" in the criminal investigation or prosecution).

[6]   Such an approach would then allow a realistic analysis of whether all the time within even allowed categories was truly necessary.

Although it is not possible (unless Goldman produces additional evidence) to determine precisely how much of these bills relates to *SEC v. Gupta* from the records Goldman has made available, there is no doubt, based on the prevalence of references to "SEC" and "Rule 45," that the *SEC v. Gupta* matter represents a significant percentage of the approximately $3.5 million of claimed post-*Rajaratnam* fees.[7]

### (a)    The SEC cases

The government has represented to this Court that "[the SEC and U.S. Attorney's Office] investigations were separate and independent." Ltr., Doc. No. 32, at 1. According to the government:

> the SEC did not act on behalf or under the control of the USAO. The USAO and SEC did not work as part of the same "prosecutorial" team. The USAO and SEC had different purposes during their investigations and separately evaluated different evidence to make independent investigatory and charging decisions. During the course of the parallel investigations, the USAO could not and did not direct the SEC to do anything . . . . Indeed, the USAO did not want the SEC to file an administrative action against Gupta immediately before the Rajaratnam trial and objected.

---

[7] To the extent the time records are vague or ambiguous regarding the nature of the work performed, the cover letters enclosing the invoices consistently highlight work related to SEC and other non-reimbursable matters. (*See, e.g.,* GS-GUPR 00234 (seeking fees generally for "[a]ttention to production of materials in response to Gupta administrative subpoena"); 00284 (seeking fees generally for "[a]ttention to discovery issues in connection with *SEC v. Gupta,* including potential depositions of GS witnesses"); 00289 (seeking fees generally for "[a]ttention to Rule 45 subpoena from Mr. Gupta, including analysis and preparation of objections"); 00327 (seeking fees generally for "[p]reparation for Lloyd Blankfein's deposition and attendance at same"); 00523 (seeking fees generally for "[a]ttention to preparation for depositions including preparation of Gary Cohn, and correspondence, both internal and external regarding the same")).

Moreover, as described above, the burden is on the party seeking restitution to segregate claimed reimbursable fees from non-reimbursable ones, so the Court may evaluate them.

*Id.* 2-3.   Counsel for the SEC similarly represented (in a hearing attended by representatives of

both government agencies) that the Commission "did an investigation, we filed our

[administrative proceeding] charges before they [the USAO] even g[o]t started on the

investigation at issue here. When we renew[ed] our charges [in the civil proceeding], it [was] the

same charges. . . . [W]e did our investigation, we made our charging decisions, we filed a

complaint before they [the USAO] g[o]t started." (Exh. D, Tr., Feb. 16, 2012, at 36).   The

government (and Goldman) cannot now claim that Goldman's legal fees associated with the SEC

investigation and proceedings were incurred during "participation" in the government's criminal

investigation.

Nor can the government reasonably argue that Goldman's legal fees associated

with the SEC investigation and proceedings were "necessary" to the criminal investigation and

prosecution.   As the government has stated, the SEC's efforts were neither required nor

requested by the government – "[d]uring the course of the parallel investigations, the USAO

could not and did not direct the SEC to do anything."   Ltr., Doc. No. 32, at 3.   Indeed, it was only

"after the Rajaratnam trial" that "the USAO's criminal investigation into Gupta's conduct kicked

into high gear[,] whereas the SEC had already charged Gupta in an administrative action."   Ltr.,

Doc. No. 34, at 4.   And it was "after the Rajaratnam trial" when the "USAO made independent

determinations – without consultation with the SEC – about which witnesses to interview and

when to conduct those interviews."   *Id.*[8]

---

[8]   In *United States v. Skowron*, 839 F. Supp. 2d 740, 747-49 (S.D.N.Y. 2012), the district court
included, as part of a restitution award, legal fees incurred by victim Morgan Stanley for its
internal investigations and interactions with the SEC.   But in *Skowron*, the defendant's
obstruction of both the internal investigation and that of the SEC were "integral to [his] scheme"
and were charged as an aspect of the conspiracy.   Moreover, that case lacked the unequivocal
statements of both the SEC and U.S. Attorney's Office that their investigations were wholly

**(b)**      *U.S. v. Rajaratnam*

Legal fees that Goldman incurred in relation to the investigation and prosecution of *United States v. Rajaratnam* also do not qualify for reimbursement here. The MVRA limits reimbursement to "necessary . . . expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). "[T]he singular 'offense' referred to in § 3663A(b)(4) is of course the criminal offense of conviction," *Papagno*, 639 F.3d at 1097, and the "investigation or prosecution" in relation to which restitution is provided for by the MVRA must be the one resulting in the defendant's conviction. Legal work done by Goldman's counsel in aid of the investigation and prosecution of Mr. Gupta does not equate to work counsel may have done for the investigation and prosecution of Mr. Rajaratnam, whatever factual overlap may exist between the two cases.

Moreover, at the time of the Rajaratnam sentencing, Goldman was plainly aware that it was a potential victim with a potential restitution claim. It had received notice of the sentencing and the opportunity to apply for restitution. Counsel's October 11, 2011 time records include a series of entries reflecting prior attention to restitution issues. (*See* GS-GUPR 00258; 00260; 00269). Yet Goldman determined not to seek restitution from Rajaratnam, and made no claim in that case. Wholly apart from the other grounds for disallowing expenses incurred in connection with the *Rajaratnam* trial, Goldman's failure to act should preclude it from seeking restitution now from Mr. Gupta. This unilateral action also deprived the Court of the ability to allocate to Mr. Rajaratnam responsibility for reimbursement of any fees to which Goldman might have been entitled.

---

separate. *Skowron* is thus distinguishable. Moreover, *Skowron* does not consider the import of the Second Circuit's controlling decision in *Battista*, and the case is now on appeal.

**2.     Goldman Is Not Entitled to Reimbursement of a Number of the Other Submitted Fees**

In practical terms, compensable fees will generally consist of producing documents and witnesses to assist the government's investigation and prosecution. Goldman had its counsel perform numerous other tasks. The point is not whether it was sensible or useful for Goldman to have its able and respected outside counsel do this work, but whether the resulting legal fees were necessary to and incurred as part of Goldman's participation in the government's prosecution of the offense of which Mr. Gupta was convicted – the statutory test. Here, the restitution request includes substantial additional fees that do not fulfill this requirement. A non-exhaustive list, based upon the time records, includes fees related to:

- **The civil § 16(b) case,** *Mercer v. Gupta*. Just as Goldman is not entitled to reimbursement for fees it incurred in relation to SEC matters, it is not entitled to reimbursement for fees incurred in relation to the § 16(b) case pursued by a private litigant – and in which Mr. Gupta prevailed. Yet at least five of counsel's cover letters recite that the work being invoiced is work on the § 16(b) case. (GS-GUPR 00234; 00256; 00272; 00284; 00289).

- **This restitution application.** A substantial portion of outside counsel's two most recent Goldman invoices, totaling over $300,000, relates to this restitution application, including time entries for the "[p]rivilege review of bills." (GS-GUPR 00527). These fees are not reimbursable under the MVRA. *See United States v. Weitzman*, 09 Cr. 989, 2010 WL 3912735, at *1 (S.D.N.Y. 2010) (excluding from restitution order fees expended in the process of applying for restitution because they "related only consequentially to the investigation or prosecution of the criminal case against Defendant (*i.e.*, those [fees] incurred solely in connection with the civil litigation, or after the sentencing hearing in this matter)").[9]

- **Work done after the *Gupta* trial.** In addition to fees associated with this request for restitution, Goldman is seeking reimbursement of other work done following the trial of Mr. Gupta. There is no basis for reimbursement of any of these fees incurred after the verdict, when the investigation and prosecution

---

[9] This request for reimbursement of fees relating to this restitution application is separate from and in addition to the fees sought in relation to Goldman's decision, in 2011, to *not* seek restitution from Rajaratnam in connection with his sentencing.

of the criminal case were over. Indeed, the last date on which Goldman could have been incurring fees for "participation in the investigation or prosecution" of Mr. Gupta was June 12, 2012, the close of the evidence in the case. Just as it would be "anomalous at best" for an "investigation that *preceded* the criminal investigation [to] qualify as 'participation'" in the criminal investigation, *Papagno*, 639 F.3d at 1099 (D.C. Cir. 2011) (emphasis in original), the expenses incurred by Goldman after the verdict fail to meet the "participation" requirement of 18 U.S.C. § 3663A(b)(4).

- **Fee advancement and allocation**. At least two cover letters refer to "[a]ttention to issues regarding advancement of fees" to Mr. Gupta and "[a]ttention to indemnification and advancement issues, including with respect to allocation of fees with Procter & Gamble." (GS-GUPR 00234; 00256). The government neither required nor requested Goldman's expenditure of these fees – nor could it properly have done so – and reimbursement for them is not provided for by the MVRA.

- **Goldman's role as third-party witness**. Goldman seeks reimbursement for fees incurred in producing trading data in its capacity as a broker-dealer with records of Galleon's trades. (*See, e.g.*, GS-GUPR 00313 ("Draft email for J. Schorr with questions to clarify P&G trading spreadsheets.")). These fees were not incurred by Goldman in its victim capacity, but rather as one of many witnesses with information bearing on allegations unrelated to Goldman, and should not be reimbursed under the MVRA.

- **Potential wrongdoing of various Goldman employees**. A number of time entries refer to work done in relation to various Goldman employees suspected of wrongdoing, primarily David Loeb and Henry King, but including others investigated by the SEC (*see, e.g.*, GS-GUPR 00371) and U.S. Attorney's Office (*see, e.g.*, GS-GUPR 00409) as well. To the extent these fees were incurred primarily in relation to the investigation of the individual, as opposed to Mr. Gupta, or in discovery in the SEC case, Goldman is not entitled to reimbursement.[10]

---

[10]  In *United States v. Amato*, 540 F.3d 153 (2d Cir. 2008), the restitution award included expenses incurred in connection with an internal investigation. *Id.* at 162. But the propriety of including those fees as restitution was not considered by the Court of Appeals, which addressed only the issue of whether the victim's expenses were sufficiently documented by an attorney's declaration, accompanied by 228 pages of invoices and other exhibits, "detailing the costs involved." *Id.* at 162-63. Moreover, the defendants had declined, at trial, Judge Swain's offer of an adjournment to present specific challenges to the fees for which the victim sought reimbursement. *See* Br. for Resp't at 89, *United States v. Amato*, 540 F.3d 153 (2d Cir. 2008), (No. 06-6500), 2007 WL 7578988, at \*89. In any event, in *Battista*, the Court of Appeals thereafter held that reimbursement for legal fees "not directly related to assistance . . . to the government in its investigation and prosecution" is not provided for by the MVRA. *Battista*, 575 F.3d at 234.

**D.     Goldman Is Not Entitled to Reimbursement for Fees Associated with Acquitted Conduct or Unproven Overt Acts**

As this Court recognized at sentencing, tipping related to Mr. Rajaratnam's trading in Goldman stock on September 23, 2008 and October 24, 2008 is the conduct underlying Mr. Gupta's conviction. Sent. Mem. & Order, Doc. No. 127, at 7-8 & n.1. Under the MVRA, the scope of the conspiracy found by the jury limits Goldman's entitlement to restitution.

Interpreting the MVRA's sister statute, the VWPA, the United States Supreme Court held in *Hughey v. United States*, 495 U.S. 411 (1990), that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Id.* at 420. A subsequent amendment to the VWPA's definition of "victim" and its incorporation into the MVRA clarified that, for "scheme, conspiracy, or pattern" offenses, the court could order restitution for harms to victims that were not the basis for the conviction, if the harm was determined by the court to have been caused by the defendant's "criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663(a)(2). But the MVRA still "only permits recovery for conduct that was part of the applicable scheme, conspiracy, or pattern of conduct that is the offense of conviction." *United States v. Donaghy*, 570 F. Supp. 2d 411, 426 (E.D.N.Y. 2008); *see also United States v. Akande*, 200 F.3d 136, 141 (3d Cir. 1999) ("[T]he 'offense of conviction,' as defined by *Hughey* . . . remains the reference point for classifying conduct that determines liability for restitution"). The provision under which Goldman seeks restitution for its legal fees also limits reimbursement to "necessary . . . expenses incurred during participation in the investigation or prosecution of *the offense* or attendance at proceedings related to *the offense*." 18 U.S.C. § 3663A(b)(4) (emphasis added).

The conspiracy of which Mr. Gupta was ultimately convicted was narrower than that for which he was investigated and prosecuted.  In particular, the jury returned a split verdict, convicting on only the September and October 2008 Goldman tips, while acquitting Mr. Gupta of the March 2007 Goldman charges and the January 2009 P&G counts, the very bookends of the alleged conspiracy.  Goldman's alleged entitlement to restitution should therefore be limited only to expenses it incurred in relation to this offense of conviction – a conspiracy comprising the September and October 2008 trading and not the acquitted counts or unproven overt acts. Goldman has made no effort to segregate out of its application the fees devoted to these matters.

The Seventh Circuit's reasoning in *United States v. Kane*, 944 F.2d 1406 (7th Cir. 1991) is applicable here.  The defendant in that case, Kane, was indicted on six counts, the first being conspiracy to defraud banks, and 2-6 being substantive bank fraud counts that were also alleged as overt acts in furtherance of the conspiracy.  Although he was acquitted on two substantive counts, the trial court ordered restitution on all five, an outcome the government defended on the ground that "Kane was involved in a unitary scheme to defraud banks and was convicted of participating in a conspiracy, [so] he can be ordered to pay restitution for the full amount of loss caused by the overall scheme, in spite of the fact that the jury acquitted him on two counts alleging bank thefts purported to be acts in furtherance of the conspiracy." *Id.* at 1414. The Court of Appeals rejected this reasoning:

> The government's argument assumes what it aims to prove, namely the overarching nature of the scheme.  Kane was convicted of conspiracy, but the jury's verdicts, taken collectively, narrow the scope of the conspiracy in which Kane participated. . . .  The jury apparently found that a conspiracy existed, but believed it to consist of three fraudulent loan applications and not five.

*Id.* at 1414-15.[11]  Here, too, the jury found that there was a conspiracy, but one limited to tips in relation to Mr. Rajaratnam's September and October 2008 trading, not the government's broader allegations.

Because the MVRA permits recovery only for conduct in the course of the offense of conviction – here a conspiracy limited to just two of the alleged tips – any reimbursement of Goldman's expenses should exclude fees not clearly linked to the investigation and prosecution of that limited conspiracy.  As with the other categories of non-reimbursable expenses, these fees are indeterminate, yet sure to be substantial.  The greater part of the conspiracy alleged by the government is not a component of the offense of conviction as found by the jury, including allegations related to 2007 and June 2008 trading.  For example, the government's efforts to add Goldman-related tipping allegations from 2007 – presumably a major effort in the months between the original and superseding indictments, a period during which Goldman accrued hundreds-of-thousands of dollars in fees – resulted in an acquittal and otherwise did not result in charges incorporated into the verdict.  Fees incurred by Goldman in relation to these efforts of the government should not be reimbursed.

### E.   The Restitution Request Should Be Denied Because Determining Goldman's Entitlement Requires Unduly Complicated Fact Determinations

As discussed above, it is not possible to parse out from the billing records what is recoverable versus what is not.  In this respect, the government and Goldman have not carried their burden and the Court should decline to order restitution of any legal fees.  What is also

---

[11]   Although *Kane* was decided before the definition of "victim" in the VWPA and MVRA included "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern," the decision remains applicable in terms of demonstrating the limitations that a jury's split verdict puts on the scope the offense of conviction, which in turn limits the scope of any restitution order.

clear from the above discussion is that any attempt to determine an appropriate restitution amount would fail the no "unduly complicated fact determinations" requirement. Given the failure to provide a detailed allocation and explanation showing why the expenses were "necessary" and "incurred during participation" in the government's prosecution of the offense, the determination of any restitution would become unduly complex such that the need to provide restitution is outweighed by the burden of the proceeding on the sentencing process.

The MVRA requires that arriving at the appropriate amount of reimbursement "not require unduly complicated determinations of fact." *Battista*, 575 F.3d at 233 (quoting *United States v. Amato*, 540 F.3d 153, 159 (2d Cir. 2008)); *see also* 18 U.S.C. § 3663A(c)(3)(B) (the MVRA is not applicable if the court finds that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process."). Congress sought to ensure by this requirement that "criminal trials do not become fora for the determination of facts and issues better suited to civil proceedings." S. Rpt. No. 104-179, at 18, *reprinted in* 1996 U.S.C.C.A.N., at 931.[12]

In light of the availability to Goldman of better suited civil remedies, the variety of bases of Goldman's legal fees combined with the volume and vagueness of its billing records renders any calculation of reimbursement "unduly complicated." Here, Goldman has – and has already utilized – a variety of civil remedies. It has cancelled and forfeited to its benefit

---

[12]   With respect to the similar VWPA provision, the Third Circuit in *United States v. Kones*, 77 F.3d 66 (3d Cir. 1996), explained that it calls for "a weighing of the burden of adjudicating the restitution issue against the desirability of *immediate* restitution – or otherwise stated, a weighing of the burden that would be imposed on the court by adjudicating restitution in the criminal case against the burden that would be imposed on the victim by leaving him or her to other available legal remedies." *Id.* at 68-69 (emphasis in original).

restricted stock and options in Goldman that Mr. Gupta held worth approximately $1 million

dollars. It may have rights with respect to any Fair Fund created as a result of the civil penalties

and disgorgement that Mr. Rajaratnam has paid or will pay in SEC proceedings against him. *See*

15 U.S.C. § 7246 (under Fair Fund provisions, civil penalties shall at the direction of the

Commission be added to a fund established for the benefit of the victims of the violations).

Goldman may have other remedies under Delaware law.[13]

In this instance the burden that this request imposes on the sentencing process

outweighs the need to provide restitution, given the other remedies at Goldman's disposal. *See*

*United States v. Cuti*, 08 Cr. 972 (DAB), 2011 WL 3585988, at *7 (S.D.N.Y. July 29, 2011) (in

which the court declined to award restitution, notwithstanding the provision of a declaration

containing over 500 pages of exhibits and an eight-volume appendix with years of detailed

billing records and time descriptions because of the difficulty of differentiating reimbursable

costs and the availability of an ongoing arbitration proceeding where reimbursement to the

parties could be better addressed).

## II.    GOLDMAN IS NOT ENTITLED TO RESTITUTION FOR THE COMPENSATION PAID TO MR. GUPTA

Goldman also seeks restitution of at least $55,472 representing approximately

25% of the cash compensation paid to Mr. Gupta as a director from November 2006 through

May 7, 2010. This request should be denied because Goldman has already forfeited to itself

approximately $1 million of options and restricted stock non-cash compensation it paid to him as

a director. Thus, it has already obtained well over 75% of Mr. Gutpa's total director

---

[13]  Goldman has also indicated it intends to seek recovery from Mr. Gupta of legal fees it advanced on his behalf, should his conviction be affirmed.

compensation. Indeed, the amount of this forfeiture above the claimed $55,472 should be a

credit against any restitution the Court may order.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the request for restitution.

Dated: New York, New York
      December 14, 2012

Respectfully submitted,


By: /s/ Richard J. Davis
               Richard J. Davis

415 Madison Avenue
11th Floor
New York, New York   10017
(646) 553-1365

Attorney for Rajat K. Gupta

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X                    **ORDER**
UNITED STATES OF AMERICA,

             -against-                                            07-CR-587(CBA)

TIMOTHY DONAGHY,

                    Defendant.
----------------------------------------------------X
AMON, United States District Judge:

      Pursuant to the Court's Order at the hearing held on June 25, 2008, the National

Basketball Association ("NBA") has filed a letter with attached exhibits in further support of its

request for restitution from the defendant.  Regarding the NBA's second request, for "expenses

incurred during participation in the investigation or prosecution of the offense or attendance at

proceedings related to the offense," the NBA's submission would require the Court and counsel

for the defendant to engage in time consuming and unnecessary work attempting to go back to

the voluminous time sheets earlier produced to coordinate the sheets with the affidavits.  This

effort must in the first instance be undertaken by the NBA.

      The NBA must append to each affidavit the pertinent time sheets with entries highlighted

that correspond to the dates and hours sought for each affiant.  They must further provide a

summary sheet to tally the number of hours sought for each of the affiants multiplied by their

hourly rate.  Presumably this summary will equal $128,964.50 for Wachtell, Lipton, Rosen &

Katz and $21,828.75 for Arkin Kaplan Rice LLP.  The supplement described herein shall be

filed with the Court and served on the defendant and the government by 5:00 P.M. on Tuesday,

July 1, 2008.  It should be noted that the Court has not determined that compliance with this

order will provide a sufficient basis to support the NBA's request for restitution.

      SO ORDERED
Dated: Brooklyn, New York
      June 30, 2008

                                          Carol Bagley Amon
                                          United States District Judge

# EXHIBIT B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 29, 2010

**BY FACSIMILE**

Honorable Laura Taylor Swain
United States District Court
500 Pearl Street
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   0 3 AUG 2010

     Re:   United States v. Matthew Weitzman,
                09 Cr. 989 (LTS)

Dear Judge Swain:

     On July 15, 2010, Your Honor ruled that restitution could be determined in this case without a further hearing, and ordered that any further submissions regarding restitution, including applications by victims for attorneys fees, be submitted by July 22, 2010, and any response by the Government or the defendant be filed by July 29, 2010.  The Government respectfully submits this letter in response to the additional restitution submissions.

     Based on the requests docketed by the Court, four counsel, representing six victims, appear to have submitted the claims for attorneys fees set forth below:

| ATTORNEY | VICTIM REPRESENTED BY ATTORNEY | FEES AND EXPENSES REQUESTED |
|---|---|---|
| David Sutton | Jocelyn Keil | $45,000.00 |
| Alexander Gardner | Patricia Flinn | $17,022.00 |
| | John and Victoria Whalen | $9,866.45 |
| | Kenneth and Joan Gelman | $6,474.00 |
| Rod Bierman | Carroll B. Stewart | $13,585.67 |
| James Bonalsky | Wendy Rosa Palacios | $2,000.00 |

In addition, in a letter dated July 15, 2010, Charles Schwab & Co. ("Schwab") reiterated its

request for a restitution hearing.

## Schwab's Request For A Hearing

As an initial matter, it appears that Schwab was unaware of the Court's ruling when it reiterated its request for a restitution hearing. The Court already has ruled that no such hearing is necessary. In reiterating its request for a hearing, however, Schwab alleged that "[t]here has been no information provided by the Government to demonstrate that its restitution proposal is equitable." July 15, 2010 Schwab Letter at 1-2. This is simply not true. The Government has been in frequent contact with the victims in this case about restitution, and many of those contacts are set forth in the victims' requests for attorneys fees. The Government shared the methodology of its restitution calculation with each victim who inquired. The Government also reviewed the details of individual victim restitution calculations when speaking with the individual victim in question. The Government has not, however, shared the details of victim account transactions with third parties, such as Schwab, which is neither a party to nor a victim in this case. Indeed, Schwab is litigating *against* victims in this case. See, e.g., May 21, 2010 Langer Letter at 3 (Schwab and Dr. Burton Langer are now engaged in an arbitration against each other). The Government is aware of no ground for sharing this information with Schwab.

## Attorneys Fees Requests

With respect to the applications for attorneys fees, the Second Circuit has made clear that this Court has the authority to order attorneys fees that are "'necessary'" and "'incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense'." United States v. Amato, 540 F.3d 153, 161 (2d Cir. 2008) see also 18 U.S.C. § 3663A(b)(4). Although the Second Circuit has declined to "formulate a precise test," id. at 162, for which other expenses may be included in a restitution award, it has noted that Section 3663A(b)(4) "seems to focus more on the link between these expenses and the victim's participation in the investigation and prosecution than on [the link between these expenses and] the offense itself." Id. at 162.

The Government can confirm for the Court that victims Jocelyn Keil, Patricia Flinn, John and Victoria Whalen, Kenneth and Joan Gelman, Carroll Stewart, and Wendy Rosa Palacios each participated in the investigation and prosecution of the offense, by meeting with an agent from the Federal Bureau of Investigation, providing documents, or attending proceedings. The Government can also confirm that it spoke with all four counsel who have submitted requests for attorneys fees during the investigation and prosecution of the case. The fees requested by counsel are in rough proportion to their participation in the investigation and prosecution of the offense, with the exception of David Sutton. Sutton's fee request is nearly three times greater than that submitted in connection with any other victim; his participation in the investigation and prosecution of the offense was smaller than that of, for example, Alexander Gardner.

According to his letter, Sutton's requested fees appear to include "speaking with the FBI,

... talking with the U.S. Attorney's Office ..., speaking with Weitzman's probation officer, researching and writing a ... letter regarding various restitution issues ..., [and] appearing at the May 27, 2010 restitution hearing." July 8, 2010 Sutton letter at 3. In that regard, the Government can confirm that Sutton participated in an approximately 1.5 hour interview of his client by an FBI agent, approximately 3 short telephone conversations with the agent, and approximately 4 telephone conversations, one of which was lengthy, with an Assistant U.S. Attorney on the case. Sutton's client, Jocelyn Keil, also provided documents to the FBI. Sutton's fees also appear to include "many hours privately investigating the thefts against Ms. Keil," by reviewing statements and requesting other records. Id. In light of the Second Circuit's "focus ... on the link between these expenses and the victim's participation in the investigation and prosecution [of the offense]" Amato at 162, it is unclear that such private investigative expenses should be included in restitution.

<u>Communications with Victim Wendy Palacios</u>

Finally, the Government notes that, as requested by counsel for victim Wendy Rosa Palacios, it has confirmed that James Bonalsky, Esq., will now receive all victim notifications on behalf of Ms. Palacios.

Respectfully submitted,

PREET BHARARA,
United States Attorney for the
Southern District of New York,
*Attorney for the United States of America*

By: _____
Joan M. Loughnane
Assistant United States Attorneys
(212) 637-2265

cc:   Craig Warkol, Esq. (Counsel for the defendant) (by fax)
      David Sutton, Esq. (Counsel for Jocelyn Keil) (by fax)
      Steven Gold, Esq. (Counsel for Patricia Flinn, John and Victoria Whalen, and Kenneth and Joan Gelman) (by fax)
      Ross Intellisano (counsel for Burton Langer) (by fax)
      Frank Cuccio (counsel for Schwab) (by fax)

3

# EXHIBIT C

**MEMO ENDORSED**

NM

U.S. Department of Justice

United States Attorney
Southern District of New York

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/8/08
```

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

February 29, 2008

**BY HAND**
Honorable Thomas P. Griesa
United States District Court
Southern District of New York
500 Pearl Street, Room 1630
New York, NY 10007

MAR 3  2008

Re:   **United States v. Sanjaya Bahel**
      **S3 06 Cr. 918 (TPG)**

Dear Judge Griesa:

The Government respectfully submits this letter in advance of sentencing in this case, which is scheduled for March 12, 2008 at 4:00 p.m. This letter addresses the Government's position with respect to the proper amount of restitution that should be awarded in the case. The Government's letter addresses the various arguments raised in: (1) the letter from Daniel M. Gitner, counsel for the United Nations ("UN"), dated October 5, 2007 (the "UN Letter"); (2) the defendant's response, dated January 15, 2008 (the "Bahel Letter"); and (3) the UN's reply letter, dated February 1, 2008 (the "UN Reply Letter").

The UN has requested that the Court order the defendant to pay the UN restitution in the amount of $2,665,874.67. The UN requests restitution for three categories of losses: (1) the defendant's entire salary for the period of his fraudulent conduct and disloyal service to the UN, in the amount of $876,892.77; (2) the costs the UN incurred from an internal investigation that was conducted by the UN's Procurement Fraud Task Force ("PTF"), in the amount of $794,198.80; and (3) the legal fees incurred by the UN in responding to the Government's investigation and prosecution of the defendant, in the amount of $994,783.10. By contrast, the defendant contends that the Court should not impose any restitution. The defendant argues that all of the losses for which the UN seeks to recover are "consequential" rather than "proximate and direct" losses caused by the defendant's conduct, and are therefore beyond the scope of the restitution statutes.

The Government respectfully submits that the UN is the victim of the defendant's crimes, and accordingly should receive restitution from the defendant. The restitution ought to include: (1) the amount of the defendant's UN salary during the time the defendant was engaged in the fraudulent conduct; and (2) the legal fees that the UN necessarily occurred as a result of the Government's investigation and prosecution of the defendant. The Government does not believe that the defendant ought to pay restitution to the UN for the expenses the UN incurred in conducting its own internal investigation.



*Please docket. TP Griesa*
*4/7/08                    USDJ*

Honorable Thomas P. Griesa
February 29, 2008
Page 2

I.      **The Applicable Restitution Statute**

   The parties appear to agree that the Mandatory Victim's Restitution Act, 18 U.S.C.
§ 3663A (the "MVRA"), is the most-applicable restitution statute for the defendant's crimes.
_See also United States_ v. _Piggie_, 303 F.3d 923, 928 (8th Cir. 2002) (applying the MVRA in a
case of honest services fraud); United States v. Paquette, 201 F.3d 40, 44 (1st Cir. 2000) (same);
United States v. Gee, 432 F.3d 713, 714 (7th Cir. 2005) (applying the MVRA for a violation of
18 U.S.C. § 666).  The MVRA makes the award of restitution mandatory.[1]  The MVRA requires
that the Court's "order of restitution _shall require that such defendant_ – in any case, _reimburse the
victim for_ lost income and _necessary_ child care, transportation, and _other expenses incurred
during the participation in the investigation or prosecution of the offense or attendance at
proceedings related to the offense_."  18 U.S.C. § 3663A(b)(4) (emphasis added).[2]

   The MVRA defines "victim" to mean one "directly and proximately harmed as a result of
the commission of an offense for which restitution may be ordered."  18 U.S.C. § 3663A(a)(2).
The UN plainly qualifies as a victim in this case because it was "directly and proximately
harmed" by the defendant's scheme to accept _kickbacks and defraud the UN of its right to his_
honest services.  Accordingly, the next question is determining to what amount of restitution, if
any, the UN is entitled.

II.     **The UN's Legal Fees Occurred as a Result of the Government's Investigation and
        Prosecution**

   The first category of losses for which the UN seeks restitution consists of the expenses
the UN necessarily incurred as a result of the Government's investigation and prosecution of the
defendant.  For example, these expenses include the legal costs the UN incurred from:
(1) complying with requests for documents from both the Government and the defense; and
(2) attending interviews of UN witnesses that were conducted by both the Government and
defense counsel.

   The clear text of the MVRA requires that the Court's order of restitution to cover this
category of expenses.

---

   [1] A second statute, the Victim and Witness Protection Act (the "VWPA"), makes
restitution discretionary.  See 18 U.S.C. § 3663(b)(4).

   [2] The same language is found in the discretionary restitution statute, the VWPA.  See 18
U.S.C. § 3663(b)(4).

Honorable Thomas P. Griesa
February 29, 2008
Page 3

A.   **The MVRA Requires that the Restitution Order Cover a Victim's Legal Expenses Relating to a Government Investigation**

The MVRA requires that the Court's order of restitution must "reimburse the victim for . . . necessary . . . expenses incurred during the participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). While the Second Circuit has yet to decide this issue, other courts have held that the MVRA's statutory language covers victims' legal expenses incurred as a necessary part of the Government's investigation. See United States v. Gordon, 393 F.3d 1044, 1056-57 (9th Cir. 2004); United States v. Fogel, 494 F. Supp. 2d 136, 139-40 (D. Conn. 2007) (ordering as part of mandatory restitution, pursuant to section 3663A(b)(4), the victim's legal fees incurred in response to the Government's investigation of the defendant's crimes).

In Gordon, the defendant was convicted of embezzling stock certificates from Cisco Systems. The Government began investigating the defendant's fraud. In the course of that investigation, the Government served upon Cisco five grand jury subpoenas and also made a number of requests requiring Cisco to analyze vast amounts of documentation and electronic evidence. See Gordon, 393 F.3d at 1057. The Ninth Circuit held that Cisco was the victim of the crime and was entitled to mandatory restitution under the MVRA. The Ninth Circuit further held that the restitution to Cisco should include the legal expenses, pursuant to section 3663A(b)(4), that Cisco incurred in responding to the Government's investigation of the defendant. Id. The court explained that: "The district court reasonably concluded that Cisco's investigation costs, including attorney's fees, were necessarily incurred by Cisco in aid of the proceedings." Id. (emphasis added).

In this case, all of the costs that the UN incurred in complying with the various requests of the Government and the defendant in preparation for trial were "necessary . . . expenses incurred during the participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). The UN began incurring necessary legal fees after the Government submitted, in December 2005, its first request for documents related to the defendant's conduct. The Government subsequently made multiple additional document requests to the UN during the course of the Government's investigation and subsequent prosecution of the defendant. Likewise, the Government requested to meet with a number of UN employees as part of its investigation. The UN incurred legal expenses as part of its representation of its employees in those meetings with the Government. In addition, once the defendant was indicted and began preparing for trial in this case, he too made multiple requests to the UN for documents and witnesses. The UN incurred legal costs in complying with the defendant's investigation as part of the case. For those reasons, the UN legal expenses fall

Honorable Thomas P. Griesa
February 29, 2008
Page 4

clearly under the statutory language.[3]

**B.      The Cases Cited By the Defendant Are Inapt**

In support of his argument against awarding restitution for these legal expenses, the defendant cites a number of cases for the proposition that restitution may not be awarded in order to cover victims' attorney's fees, which are "consequential damages." See Bahel Letter at 3-4, citing, inter alia, United States v. Seward, 272 F.3d 831, 839 (7th Cir. 2001); United States v. Onyiego, 286 F.3d 249 (5th Cir. 2002); United States v. Simmonds, 235 F.3d 826, 833-34 (3d Cir. 2000); and United States v. Mullins, 971 F.2d 1138, 1147 (4th Cir. 1992).

The cases that the defendant cites, however, are not applicable. See UN Reply Letter at 2. Many of the cases the defendant cites predate both the 1994 amendment to the VWPA, and the passage in 1996 of the MVRA, which added the ability for victims' to recover costs related to the Government's investigation and prosecution of the offense. See, e.g., Mullins, 971 F.3d 1138 (court's opinion issued in 1992).

The more recent cases that the defendant cites completely fail to discuss section 3663A(b)(4), which is the relevant provision in this case. This is not surprising since none of those cases involved a claim by a victim to recover legal expenses incurred during the course of a Government investigation or prosecution. See, e.g., Simmonds, 235 F.3d at 833-34 (rejecting victim's claim to recover in restitution the amount of the victim's new higher insurance premiums following the defendant's arson of the victim's home); Seward, 272 F.3d at 839 (rejecting victim's claim to recover in restitution the attorney's fees the victim incurred to contest a will that the defendant had forged); Onyiego, 286 F.3d at 256 (rejecting victim's claim to recover in restitution the attorney's fees incurred when the victim was forced to defend action instituted by parties to collect on tickets the defendant had stolen).

Accordingly, while the case that defendant cites do explain that on some occasions a victim's legal fees should not be covered by a restitution award, the cases are not relevant to the

---

[3] The Government does not contend that restitution is appropriate under section 3663A(b)(4) every time a victim retains an attorney to assist a victim in responding to a Government subpoena or in submitting to an interview by the Government. Rather, the statute requires that the legal expenses must be "necessary." See 18 U.S.C. § 3663A(b)(4). For example, a great many fraud cases involve multiple victims, and in most of them, the defendant has insufficient assets from which all victims may recover full restitution. In those cases payment is made to victims on a pro rata basis, depending on their loss. It would be unfair for legal expenses (beyond those necessary to participate in the Government's investigation) that a given victim may choose to incur, to increase that victim's pro rata share to the detriment of other victims.

Honorable Thomas P. Griesa
February 29, 2008
Page 5

present inquiry. In this case, the UN incurred legal fees as a necessary part of its participation in a Government investigation and prosecution. Accordingly, the UN should recover those expenses as part of the Court's restitution order.

## III.   The UN's Expenses Related to Its Own Internal Investigation of the Defendant

The second category of losses for which the UN seeks restitution consists of the expenses the UN incurred as a result of conducting its own internal investigation of the defendant's conduct. The Government respectfully submits that the MVRA does not permit the UN to collect restitution for the costs of its own internal investigation.

Section 3663A(b)(4)'s reference to the "expenses incurred during the participation in the investigation" refers to the Government's investigation, not the defendant's own internal investigation. 18 U.S.C. § 3663A(b)(4) (emphasis added). The clear text of the statute supports this reading. First, the text refers to the victim's "participation in the investigation," id. (emphasis added), thus indicating that Congress intended that the victim would "participate" in the Government's investigation, rather than "conduct" its own investigation. Second, the section refers to the victim's "participation in the . . . prosecution" and "attendance at proceedings related to the offense." Id. (emphasis added). This language likewise makes clear that the relevant investigation for purposes of section 3663A(b)(4) is the one conducted by the Government.

By contrast, internal investigations conducted by the victim are beyond the scope of section 3663A(b)(4). Those expenses are assumed voluntarily by the defendant. For example, while many victims may chose to conduct their own investigations, federal law does not obligate them to do so. By contrast, the victims are compelled to honor Government subpoenas for documents or witness testimony, and therefore are entitled to restitution for these expenses. For that reason, a victim's internal investigation of the crime is neither "necessary" to the Government's investigation, nor a "proximate and direct" harm caused by the defendant's conduct.[4]

---

[4] The Ninth Circuit in Gordon suggested that section 3663A(b)(4) also covers the costs of the victim's internal investigation. See Gordon, 393 F.3d at 1049, 1057; see also United States v. Piggee, 303 F.3d 923, 928 (8th Cir. 2002) (holding victims' expenses incurred from internal investigation were properly awarded as part of restitution order under section 3663A). However, the Ninth Circuit's reasoning was focused on those expenses that were necessary to the Government's investigation. The court did not conduct an independent analysis of whether Cisco's expenses incurred solely because of its internal investigation were covered by section 3663A(b)(4). Even if the Ninth Circuit did construe the section to cover such categories of expenses, for the reasons stated above, the Government does not believe that is the best reading of the statutory language.

Honorable Thomas P. Griesa
February 29, 2008
Page 6

In the present case, while the UN was aware that the Government was investigating the case, the UN independently decided to launch its own internal investigation. The investigations were conducted separately and independently. While the UN may have had many of its own reasons to begin the PTF investigation, the decision to do so was the UN's. The UN was in no way obligated by this Office to begin the PTF investigation. To the contrary, absent a waiver of its immunity, the UN is immune from United States law and the scope of Government subpoenas. For that reason, the UN's investigation was not "necessary" to the Government's investigation nor was the defendant's conduct the "proximate and direct" cause, as defined by section 3663A, of the internal investigation. Accordingly, the expenses for the UN's internal investigation are beyond the scope of section 3663A(b)(4).

**IV.    The Salary the UN Paid to the Defendant**

The third category of losses for which the UN seeks restitution consists of the cost of the salary that the UN paid to the defendant during the years in which he was engaged in his fraudulent conduct. The Government respectfully submits that this amount should be made part of the defendant's restitution. The evidence at trial demonstrated that the defendant was conducting his fraudulent scheme between 1999 and 2006.

The defendant was convicted of accepting kickbacks in exchange for his assistance in winning UN contracts, thus defrauding the UN of its right to his honest services as an employee. The UN paid a salary to the defendant on the condition that the defendant conducted his work with the primary view of serving the best interests of the UN. Instead, the defendant reneged on his end of this employment agreement by selling his services to a third party in a way that damaged the UN significantly. A very large percentage of the harm the UN suffered as a result of the defendant's fraudulent scheme is difficult to quantify in pecuniary terms. For example, there is no way to put a price tag on the reputational harm the UN has suffered as a result of the defendant's corruption being exposed.

It is possible, however, to quantify how much money the UN paid Bahel when Bahel was not fulfilling his end of his employment agreement. While he was accepting his salary from the UN, the defendant represented to individuals throughout the UN, that he was acting in the UN's best interests. The proof at trial demonstrated that he actually was not acting in such a manner and the defendant's first loyalties actually were to himself and his co-conspirators, the Kohlis. Accordingly, the defendant defrauded the UN of the salary it was paying to him during the years of his disloyalty. As such, that salary should be returned to the UN in the form of restitution. See 18 U.S.C. § 3663A(b)(1)(B)(i)(I) (requiring the restitution order to include the value of the property on the date of loss); City of New York v. Bower, 1991 WL 19810 (S.D.N.Y. Feb. 1, 1991) (LMM) ("Bower received salary payments from the City in exchange for work which he failed to perform. His conviction for violations of the Hobbs Act establishes that he was a faithless employee and that his employer, the City, is entitled to recover the salary paid to him."); see also Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d. Cir. 2003) (citing

Honorable Thomas P. Griesa
February 29, 2008
Page 7

New York State law that a principal is entitled to recover from his unfaithful agent any
commission paid by the principal).

The defendant contends that the UN should not be refunded his entire salary because he
was working in the UN's interests on all of the contracts that did not involve the Kohli family.
See Bahel Letter at 5. The defendant contends that the UN would reap a windfall if it did not
have to pay the defendant for any of his salary over an eight-year period. The defendant would
have the Court attempt to limit the amount of restitution to that period of his salary which
involved the defendant working on contracts that assisted the Kohli family. Id.

The defendant's request is contrary to analogous precedent. See Phansalkar v. Andersen
Weinroth & Co., L.P., 344 F.3d 184 (2d. Cir. 2003); City of New York v. Bower, 1991 WL
19810 (S.D.N.Y. Feb. 1. 1991) (LMM). In Phansalkar, a former employer sued its ex-employee
for breaching his duty of loyalty and good faith to the employer. The employee claimed that he
was only required to forfeit that portion of his salary which derived from transactions with
respect to which he had been disloyal. The Second Circuit disagreed. The Court concluded that
under New York State's "faithless servant doctrine," the employee was required to forfeit all
compensation awarded to him after the date upon which his disloyalty began. See Phansalkar,
344 F.3d at 200. In reaching its decision, the Court noted that: (1) the defendant's disloyalty was
not limited to a single incident, but rather extended to nearly every transaction on which he
worked; and (2) the employee was an important earner for the employer. Id. at 202-03. The
Court explained that: "Where an employee's misconduct occurs in well over the majority of his
areas of responsibility and continues over many months, that employee cannot avoid a finding
that he 'substantially violated' the terms of his service by simply pointing out that his work was
valuable to his employer, and establishing that he was loyal with respect to the projects for which
he had no particular responsibility." Id. at 203. The Court refused to limit the scope of
employee's forfeiture to only some of the transaction on which he worked, because the
employment "agreement calls for general compensation, and does not limit compensation to
specific amounts paid for the completion of specific tasks." Id. at 208; see also Bower, 1991 WL
19810, *2 (ruling that disloyal employee must forfeit his entire salary rather than merely the
portion involving the employee's disloyalty because the employee's salary was not apportioned
in his contract).

In this case, the defendant's salary was not apportioned. Rather he was paid a single
salary to perform his UN duties. The scope of the defendant's disloyalty was also expansive,
particularly since it involved two manpower contracts that were worth tens of millions of dollars.
Accordingly, the restitution order against the defendant ought to encompass his entire salary.

Honorable Thomas P. Griesa
February 29, 2008
Page 8

## Conclusion

For all of the reasons set forth above, the Government respectfully submits that the Court should order that the defendant pay restitution to the UN in the amount of $1,871,675.87. That sum includes two categories of losses: (1) the defendant's entire salary for the period of disloyalty in the amount of $876,892.77; and (2) legal fees incurred by the UN in responding to the Government's investigation and prosecution of the defendant, in the amount of $994,783.10.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:    _____

Cathy Seibel
Deputy United States Attorney
Tel. No.: (212) 637-1087
Alexander J. Willscher
Assistant United States Attorney
Tel. No.: (212) 637-2736

cc:    Richard B. Herman, Esq. (by fax & U.S. Mail)
       Daniel M. Gitner, Esq. (by fax & U.S. Mail)

# EXHIBIT D

1

C2G8GUP1

 1  UNITED STATES DISTRICT COURT
 1  SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x
 2  UNITED STATES OF AMERICA,
 3
 3              v.                        11 Cr. 907 (JSR)
 4
 4  RAJAT GUPTA,
 5
 5                  Defendant.
 6  ------------------------------x
 6  SECURITIES AND EXCHANGE
 7  COMMISSION,
 7
 8                  Plaintiff,
 8
 9              v.                        11 Cv. 7566 (JSR)
 9
10  RAJAT GUPTA,
10
11                  Defendant.
11  ------------------------------x
12                                      February 16, 2012
12                                      4:25 p.m.
13
13  Before:
14              HON. JED S. RAKOFF
14                                      District Judge
15
15                  APPEARANCES
16
16  PREET BHARARA
17       United States Attorney for the
17       Southern District of New York
18  BY:  REED BRODSKY
18       RICHARD TARLOWE
19       Assistant United States Attorneys
19
20  SECURITIES AND EXCHANGE COMMISSION
20  BY:  KEVIN P. McGRATH
21       VALERIE SZCZEPANIK
21       JOHN HENDERSON
22
22  KRAMER LEVIN NAFTALIS & FRANKEL LLP
23       Attorneys for Defendant
23  BY:  GARY NAFTALIS
24       DAVID S. FRANKEL
24       ROBIN WILCOX
25

C2gngup2

1    putting off the depositions in this case until after the
2    criminal case because of your eagerness to move this case
3    forward.  Yes?
4              MR. McGRATH:  That was the AP.  We got wise after
5    that.
6              THE COURT:  I see.
7              MR. McGRATH:  As your Honor knows, we withdrew that
8    for a number of reasons.  But the point is I think that's what
9    makes this case very easily distinguishable from the cases that
10   come out where you have a joint investigation.  Here we did an
11   investigation, we filed our charges before they even get
12   started on the investigation at issue here.  When we renew our
13   charges, it is the same charges.
14             I am not saying we didn't benefit somewhat by the
15   sharing of information.  But we did our investigation, we made
16   our charging decisions, we filed a complaint before they get
17   started.
18             They start their investigation, they make their
19   decisions as to who they want to interview.  We are not
20   involved in those discussions.  They make their decisions on
21   what evidence they want.
22             The mere fact that they get access to information,
23   that happens in every case.  That doesn't make it a joint
24   investigation.
25             Similarly, the fact that we are invited to their

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300