```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
UNITED STATES OF AMERICA,             :
                                      :
        -v-                           :    11 Cr. 907 (JSR)
                                      :
RAJAT K. GUPTA,                       :    ORDER
                                      :
            Defendant.                :
------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

By letter dated March 8, 2013, Mr. Tom Huddleston, Jr., a reporter for The American Lawyer, requested that the Court unseal billing records submitted by non-party The Goldman Sachs Group, Inc., in support of its request for restitution in the above-captioned case. The Court forwarded Mr. Huddleston's letter to all relevant counsel and permitted counsel to submit a letter to the Court responding to Mr. Huddleston's request, should any of them wish to do so.

On March 26, 2013, Sullivan & Cromwell LLP, counsel to The Goldman Sachs Group, Inc., submitted a letter informing the Court that Sullivan & Cromwell, Goldman Sachs, and The American Lawyer "have reached an accommodation . . . which is designed to provide the vast majority of the requested information, while protecting against the public disclosure of certain competitively-sensitive commercial information relating to the billing arrangements between Goldman Sachs and Sullivan & Cromwell." By letter dated

1

the same day, Ms. Elisa Miller, General Counsel to the publisher of The American Lawyer, confirmed the same and "respectfully withdr[e]w our request for unsealing." All three of the above-mentioned letters will be docketed along with this Order.

Given the representations of counsel that the request for unsealing is now withdrawn, the Court considers this matter closed.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       March 27, 2013

# THE
# AMERICAN LAWYER

March 8, 2013

**VIA OVERNIGHT DELIVERY**

The Honorable Judge Jed Rakoff
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    USA v. Gupta (1:11-cr-00907)

Dear Judge Rakoff:

    I am a reporter for *The American Lawyer*, and have, along with several colleagues, been covering the U.S. government's insider trading case against former Goldman Sachs director Rajat Gupta. Most recently, I have followed your order that Gupta pay restitution to Goldman Sachs for work performed by the law firm Sullivan & Cromwell with respect to the criminal case. I am writing to request that the Court continue to provide the public and press with access to court documents, including exhibits attached to filings, and therefore I request access to the billing records that detail the work performed by Sullivan & Cromwell on behalf of Goldman Sachs that have been submitted to the court but placed under protective order.

    It is well settled that the common law of New York and the United States Constitution provide a right of public access to judicial proceedings and records. Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980); Johnson Newspaper Corp. v. Morton, 862 F.2d 25 (2d Cir. 1988); Mosallem v. Berenson, 76 A.D.3d 345 (N.Y. App. Div 2010).

    Access means more than the ability to attend open court proceedings; "The existence of the common law right to inspect and copy judicial records is beyond dispute." In re Application of National Broadcasting Company, Inv. v. Myers, 635 F.2d 945 (C.A. N.Y. 1980). This right, which predates the Constitution, is based on the public's right to know, which encompasses public documents generally, and the public's right to open courts, which applies to judicial records. Hartford Courant v. Pellegrino, 380 F.3d 83 (C.A.2 (Conn.) 2004); see also United States v. Smith, 787 F.2d 111 (3d Cir. 1986); United States v. Martin, 746 F.2d 964 (3d Cir. 1984). Indeed, it is a right "fundamental to a democratic state." United States v. Mitchell, 551 F.2d 1252, 1258 (D.C. Cir. 1976).



The presumption of openness "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Press-Enterprise v. Superior Court, 464 U.S. 501, 510 (1984) ("Press-Enterprise I"); JohnsonWestchester Rockland Newspapers v. Leggett, 399 N.E.2d 518 (N.Y. 1979). Thus, before closing proceeding or records, the court must articulate clearly for the record the overriding interest it seeks to protect and make findings for the record that are specific enough that the appellate court can review them. See People v. Bici, 621 N.Y.S.2d 666 (N.Y. App. Div. 1995). Moreover, the court must consider alternatives to closure and must state on the record its specific reasons for rejecting these possible alternatives. See ABC, Inc. v. Stewart, 360 F.3d 90 (2d Cir. 2004); United States v. Simone, 14 F.3d 833, 840-42 (3d Cir. 1994); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071-73 (3d Cir. 1984). Given that the right of access is firmly grounded in common-law principles, and is an important, constitutional right arising from the First and Sixth Amendments (as applied to the States by the Fourteenth Amendment), the public, including the press, should be heard before judicial records and proceedings are closed to the public. See generally Danco Laboratories v. Chemical Works of Gedeon Richter, 711 N.Y.S.2d 419, 423 (App. Div. 2000) (noting that "the existence of the correlating common-law right to inspect and copy judicial records is "beyond dispute.").

Access serves numerous noteworthy purposes. It:

- promotes informed discussion of governmental affairs by providing the public with a more complete understanding of the judicial system

- serves an important "educative interest"

- gives "the assurance that the proceedings were conducted fairly to all concerned" and promotes the public "perception of fairness"

- has a "significant community therapeutic value" because it provides an "outlet for community concern, hostility, and emotion"

- serves as a check on corrupt practices by exposing the judicial process to public scrutiny, thus discouraging decisions based on secret bias or partiality

- enhances the performances of all involved.

United States v. Criden, 675 F.2d 550, 556 (3d Cir. 1982) (quoting Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 569-72, 584, 596-97 (1980)); see also Publicker, 733 F.2d at 1068-70.

Access to these protected documents is important to *The American Lawyer* and its readers. We regularly report the type of information presented in the Goldman Sachs billing records—including time billed on a project, the amount billed, and by whom—whenever that information is available, in order to provide our readers with a clear

picture of the business operations of top law firms, such as Sullivan & Cromwell, and the economic cost of business transactions and civil and criminal defense. Our ability to accurately report on billing rates is dependent on the ability to review records filed in court – rather than relying solely on voluntary reporting from law firms. *See, e.g.*, Huddleston, "As Hostess Slides Toward Oblivion, Lawyers Snack on the Remains," The Am Law Daily (Nov. 16, 2012); Blum, "Judge Takes Red Pen to Legal Bills in *Apple v. Samsung*," The Litigation Daily (Nov. 8, 2012). Our readers – primarily attorneys – seek this information to guide their own practices, and the public at large looks to attorney billing as a reflection of the general health of the legal market. As Mr. Gupta is perhaps the most high-profile of individuals charged in connection with insider trading in recent years, the public interest in the case – including how and at what cost a defense is mounted – is heightened. As Your Honor notes in the memorandum order: "[D]espite their volume, Goldman Sachs's time entries specify the work performed with sufficient particularity to assess what was done, how it was done, and why it was done." Certainly, the clarity and specificity of the records, which Your Honor praises in the order, makes them of particular interest to our readers, especially in light of Mr. Gupta's assertions to the contrary.

To the extent the billing records include references to trade secret or other confidential information not of public concern; if that were the case, such information can be redacted without impinging on the State's broad presumption of open access. Danco Labs, 274 A.D.2d at 6 ("any order denying access must be narrowly tailored," and noting that "appropriate redaction is a valid method of protecting trade secrets when a movant seeks to seal an entire case file."). Also, as I note above, our publication regularly reports on the billing practices of law firms without infringing upon their rights to protect trade secrets or other confidential information.

Accordingly, I respectfully request that the Court release the Goldman Sachs billing records and grant my request for access. Should Your Honor determine that a hearing is necessary, I request the opportunity for myself or one of my colleagues to be heard at such a hearing on behalf of *The American Lawyer*.

Respectfully submitted,

Tom Huddleston Jr.
*The American Lawyer*

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

March 26, 2013

By Hand

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *United States v. Rajat Gupta*, 11-cr-907 (JSR)

Dear Judge Rakoff:

We write on behalf of The Goldman Sachs Group, Inc. and its counsel, Sullivan & Cromwell LLP, in response to the Court's March 13, 2013 letter instructing that we advise of any position on *The American Lawyer*'s request for access to billing records submitted by Goldman Sachs in connection with the sentencing of Rajat Gupta. We appreciate the Court extending the time within which to advise of our position on this request.

We have reached an accommodation with *The American Lawyer* which is designed to provide the vast majority of the requested information, while protecting against the public disclosure of certain competitively-sensitive commercial information relating to the billing arrangements between Goldman Sachs and Sullivan & Cromwell. We understand that *The American Lawyer* intends to advise the Court today that it has therefore withdrawn its request for public disclosure of this information.

Respectfully submitted,

*/s/ Steven R. Peikin*
Steven R. Peikin

cc:   Ms. Elisa Miller, Esq.
      (ALM)

The Honorable Jed S. Rakoff -2-

    Richard Tarlowe, Esq.
    (United States Attorney's Office)

    Richard J. Davis, Esq.

    Jonathan Schorr, Esq.
    (Goldman Sachs)



Elisa L. Miller
General Counsel

March 26, 2013

**VIA HAND DELIVERY**

The Honorable Jed S. Rakoff
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    USA v. Gupta (1:11-cr-00907)

Dear Judge Rakoff:

    I am General Counsel to ALM Media, LLC, publisher of *The American Lawyer*. I write to follow up on the March 8, 2013 letter of my colleague, Tom Huddleston, requesting access to the billing records on behalf of Goldman Sachs that were submitted under seal to the court in the above-referenced action. Following discussion with counsel to Goldman Sachs, we have come to an agreement and accordingly respectfully withdraw our request for unsealing.

    Should Your Honor wish to discuss this further, Mr. Huddleston and I are available at your convenience. Thank you for your attention to this matter.

    Respectfully submitted,

    Elisa Miller

cc:    Tom Huddleston, *The American Lawyer*
       Steven Peikin, counsel to Goldman Sachs (via email)